[No. C054975. Third Dist. July 15, 2008.]

NATIONWIDE ASSET SERVICES, INC., et al., Plaintiffs and Appellants,
v.
PRESTON DuFAUCHARD, as Commissioner of Corporations, etc., Defendant and Respondent.

**COUNSEL**

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, C. Athena Roussos; Loeb & Loeb and Michael L. Mallow for Plaintiffs and Appellants.

Preston DuFauchard, Wayne Strumper, Alan S. Weinger and Joan E. Kerst for Defendant and Respondent.

OPINION

**DAVIS, Acting P. J.**—"No person shall engage in the business . . . of . . . acting as a prorater . . . without first obtaining a license from the commissioner." (Fin. Code, § 12200.)[1] "A prorater is a person who . . . engages in . . . the business of *receiving money or evidences thereof* for the purpose of distributing [it] among creditors in payment or partial payment of the obligations of the debtor." (§ 12002.1, italics added.)

Plaintiffs Nationwide Asset Services, Inc., and Universal Nationwide, L.L.C., petitioned for a writ of administrative mandamus, seeking to vacate a decision of defendant, the Commissioner of Corporations, that upheld the issuance of its order prohibiting plaintiffs from acting as proraters, and that reserved for subsequent proceedings the issues of administrative levies and ancillary relief. (§§ 12002.1, 12103, 12105.) Plaintiffs argued that their activities did not fall within the statutory definition of prorating. The trial court denied the petition. In this timely appeal from the ensuing judgment, they renew their argument. We shall affirm.

## BACKGROUND

Plaintiffs are part of the interrelated holdings of William Anderson and Gary Brown. They engage in the business of seeking to settle outstanding debts. Their headquarters are in Sacramento (although they are incorporated in other states). After paying an enrollment fee, their customers direct the monthly transfer of funds to dedicated accounts in their names in a Colorado bank. The customers have only "limited" access to these accounts (the exact nature of the limitations being unclear). The customers must also execute an authorization "that vests control of [the] deposited customer funds" in plaintiffs or their designees.

The customer funds are never in the actual possession of plaintiffs. An independent business entity (Global)[2] manages these dedicated customer accounts under a contract with the Colorado bank, withdrawing funds from the accounts in payment of the management fees it assesses on the customers. Upon deposit of enrollment fees from the customers, plaintiffs negotiate with the creditors for a settlement on the outstanding debt. At the direction of plaintiffs, Global then makes electronic transfers from the customer bank accounts to the creditors for the amount of the negotiated settlement. Global

---

[1] Hereafter, undesignated section references are to the Financial Code.

[2] The decision concluded that "it was not competently demonstrated that Global has a nexus sufficient with the remaining respondents to impute culpability[,] or engaged in activity that constitutes prorati[ng]," but did not further elaborate on the exact relationship between plaintiffs and Global.

also makes electronic transfers from the accounts to plaintiffs in payment of the various fees for their services.

In December 2005, defendant issued an order that prohibited plaintiffs from continuing their business activities until they obtained a proraters license under the inharmoniously titled "Check Sellers, Bill Payers and Proraters Law."[3] (§ 12000.) A hearing officer conducted evidentiary proceedings and took the matter under submission in early 2006. He issued his proposed decision in April 2006, which defendant adopted without elaboration four months later.

In its adopted decision, defendant concluded that the receipt of money can be actual *or* constructive. Although it asserted the questionable proposition that plaintiffs' receipt of information about the amounts on deposit in the accounts of their customers was "evidences" as used in the statute, it also ruled that "[m]indful of the authorizations required to be executed by their customers, it becomes equally evident that while the . . . customers[] possess [legal] title, respondents [plaintiffs here] receive sufficient control over customers' funds that permit disbursements both on behalf of clients and for respondents' compensation." The decision further noted that plaintiffs did not commence providing any services to their customers until the funds were in this constructive form of their possession.

Plaintiffs filed a manifestly irregular petition in the trial court that admixed factual and legal propositions in the form of a brief without any of the necessary factual pleadings and without the administrative record.[4] After defendant challenged various procedural and substantive defects in the petition, plaintiffs asserted that "only one document from the lower court [*sic*] . . . is relevant to this Petition. That document is the Commissioner's Decision. To prevail in this action, [plaintiffs] do not need to dispute the factual findings in the Decision, and [plaintiffs] do not need to provide this Court with the documents admitted into evidence . . . . For the purposes of this Petition, [plaintiffs] are willing to concede the accuracy of the factual findings set forth in the Decision. The problem with the Decision is . . . how the Commissioner applied the law to those . . . findings."

In its tentative decision, the court accepted this as a stipulation and took judicial notice of the decision. The court rejected the argument that defendant had improperly equated receipt of its customers' bank statements with receipt of its customers' funds: "The decision does not state that that 'money or

---

[3] Plaintiffs nonetheless continued providing services to their existing customers because plaintiffs believed that the order "was completely wrong on its face."

[4] The copy in the appendix on appeal also apparently lacks the final eight pages of the document.

evidences thereof' means 'evidence' such as bank statements. The focus of [defendant's] decision is on the control exercised by [plaintiffs] . . . . [¶] . . . [¶] The legal Conclusions in the Decision also emphasize the control which [plaintiffs] receive over customers' funds." Following argument, the court confirmed its tentative decision and denied the writ. It then entered a judgment that did not elaborate on its reasoning.

## DISCUSSION

This appeal involves the interpretation of statutes in light of the undisputed facts as found in the decision. Our standard of review therefore is de novo. (*Sulier v. State Personnel Bd.* (2004) 125 Cal.App.4th 21, 26 [22 Cal.Rptr.3d 615].)

Plaintiffs continue their misreading of the basis of defendant's decision in initially asserting that " 'evidences of money' " is an archaic term meaning a medium of exchange (such as a negotiable instrument) that represents the actual funds. They cite various musty treatises and decisions from other courts (as well as an opinion of the Attorney General and defendant's own regulations) to the end of arguing that a statement of an account's balance cannot be included in this term. This exercise in historical legal etymology (whatever interest it may possess) is beside the point, as the trial court has already noted, and we do not need to belabor the propriety of this proposition.

Seizing on the various factual findings that Global and the Colorado bank are entities independent of plaintiffs, and that plaintiffs do not directly receive the funds deposited in their customers' accounts, plaintiffs come to the gist of the present dispute. They first contend that the decision lacks a factual basis for its conclusion that they constructively received their customers' funds. They also assert that the statute does not expressly apply to a constructive receipt of funds. Finally, they assert that the inclusion of constructive receipt within the reach of the statute violated their right to due process because the statutory language does not give them sufficient notice that such conduct is proscribed.

The first point does not detain us long. The decision does not contain any "analytic gap." Rather, it rests its conclusion of constructive receipt on the documents that the customers execute ceding control over their funds to Global (which in turn acts as plaintiffs' agent in directing the transfer of

funds to them for their fees and to creditors in the settlement of the consumers' debts) without reserving any power to countermand the transfers.[5]

■ On their second point, plaintiffs do not present any authority precluding a court from engaging in the common equitable practice of using the handy adjective "constructive" in order to impute a legal effect to a set of circumstances that does not literally come within a rule. If plaintiffs indeed have managed to "receive" the money of their customers in all but name, then their conduct is precisely that which the statute has targeted. There would not be any reason to permit them to evade the statute's salutary requirement of subjecting their practices to defendant's licensing oversight for the protection of consumers. ■ "The law respects form less than substance." (Civ. Code, § 3528.) It is no different than deeming an employer-induced resignation to be a "constructive" discharge in order to prevent the employer from making an end run around discrimination laws. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1244–1245 [32 Cal.Rptr.2d 223, 876 P.2d 1022].)

■ In light of this well-established legal principle, their complaint of a violation of "fundamental due process" must fail. It cannot be entirely unanticipated that exercising control, even through a third party, over funds to which a customer has only limited access, will result in imputation of possession of the funds. Therefore, the statute is not void for vagueness with respect to the actions it seeks to regulate (*Personal Watercraft Coalition v. Marin County Bd. of Supervisors* (2002) 100 Cal.App.4th 129, 138–139 [122 Cal.Rptr.2d 425]), nor is there any obstacle to the customary retrospective application of decisional law (*Peterson v. Superior Court* (1982) 31 Cal.3d 147, 161 [181 Cal.Rptr. 784, 642 P.2d 1305]; but see *Camper v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679, 688–689 [12 Cal.Rptr.2d 101, 836 P.2d 888] [a departure from customary retroactive effect of statute's interpretation where unforeseen and would interfere with expectations in numerous cases]), especially where plaintiffs were able presently to obtain a decision of defendant from 2004 (of which we take judicial notice pursuant to their motion) that indicated defendant has employed the concept of constructive receipt in its rulings: ". . . Even if respondent thereafter transferred all client trust monies into accounts controlled by Acuity to which . . . respondent [does not] have [any] access, the . . . documents make it clear that respondent still retains control over both the negotiation of settlements and the disbursement of funds to pay them, and receives compensation for doing so. [¶] Acuity's role, by contrast, is that of a mere 'scribe.' It receives its instructions from respondent, and not from the clients for whom it is holding

---

[5] As the authorization forms themselves are not in the record, we must accept the decision's characterization of them. As a result, we do not express any opinion on whether a future form might be structured in such as way as to preclude a finding of constructive receipt.

funds. It [does not have any] discretion to refuse respondent's directions, except if there are insufficient funds to issue a payment as instructed. Acuity simply serves as respondent's agent; respondent continues to constructively receive and disburse funds in violation of Financial Code section 12200." (*In re Positive Return, Inc.* (Cal. Dept. Corp., Dec. 29, 2004) OAH No. N2004070225, pp. 8–9 <http://www.corp.ca.gov/OLP/pdf/oah/Positive.pdf> [as of July 15, 2008].)

## DISPOSITION

The motion for judicial notice is granted. The judgment is affirmed. Defendant is awarded its costs on appeal.

Morrison, J., and Robie, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 28, 2008, S166284.