[No. C060579. Third Dist. Oct. 20, 2009.]

ATIQUR REHMAN, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

## COUNSEL

Walter S. Nomura for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Alicia M. B. Fowler, Assistant Attorney General, David J. Neill and Julie L. Harlan, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**ROBIE, J.**—Plaintiff Atiqur Rehman filed a petition for a writ of mandate seeking an order directing defendant Department of Motor Vehicles (the department) to rescind its suspension of his driver's license because, with a blood-alcohol content of 0.04 percent or more, he drove a vehicle that requires a commercial driver's license. (Veh. Code,[1] § 13353.2, subd. (a)(3).) The trial court denied the petition.

On appeal, Rehman contends that while the department can immediately suspend the driver's license of a person who, with a blood-alcohol content of 0.04 percent or more, drives a vehicle that requires a commercial driver's license, the department cannot sustain an order of suspension following an administrative hearing unless the person had a blood-alcohol content of 0.08 percent or more. (§ 13557, subd. (b)(2)(C)(i).)

---

[1] All further section references are to the Vehicle Code.

We agree with the trial court that this is one of the rare instances in which we must disregard the literal terms of a statute because they conflict with another statute and would compel an absurd result that the Legislature obviously did not intend. Accordingly, we conclude that a blood-alcohol content of 0.04 percent or more was sufficient both to suspend Rehman's license and to sustain the order of suspension following the administrative hearing. We shall therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A California Highway Patrol officer operating the scales at an Interstate 5 truckstop north of Santa Nella on June 7, 2008, arrested Rehman for operating his tractor-trailer under the influence of alcohol. (§ 23152, subd. (a).) Two breath tests administered to Rehman about an hour after he was first stopped showed a blood-alcohol content of 0.04 and 0.05 percent, respectively. Under subdivision (a)(3) of section 13353.2, Rehman's driving privilege was subject to immediate suspension.[2] The officer confiscated Rehman's license and gave him the required notice of the order of suspension (see § 13353.2, subd. (b)) and a temporary 30-day license.[3]

Rehman requested an administrative hearing. (See § 13558.) Under subdivision (c)(2) of section 13558, "The only issues at the hearing on an order of suspension pursuant to Section 13353.2 shall be those facts listed in paragraph (2) of subdivision (b) of Section 13557." That paragraph provides in relevant part as follows:

"(2) If the department determines . . . by the preponderance of the evidence, all of the following facts, the department shall sustain the order of suspension . . . :

"(A) That the peace officer had reasonable cause to believe that the person had been driving a motor vehicle in violation of Section 23136, 23140, 23152, or 23153.

"(B) That the person was placed under arrest or, if the alleged violation was of Section 23136, that the person was lawfully detained.

---

[2] "The department shall immediately suspend the privilege of a person to operate a motor vehicle for any one of the following reasons: [¶] . . . [¶] (3) The person was driving a vehicle that requires a commercial driver's license when the person had 0.04 percent or more, by weight, of alcohol in his or her blood." (§ 13353.2, subd. (a)(3).)

[3] Under subdivision (a) of section 13353.3, "An order of suspension of a person's privilege to operate a motor vehicle pursuant to Section 13353.2 shall become effective 30 days after the person is served with the notice pursuant to . . . subdivision (b) of Section 13353.2."

"(C) That the person was driving a motor vehicle under any of the following circumstances:

"(i) When the person had 0.08 percent or more, by weight, of alcohol in his or her blood.

"(ii) When the person was under the age of 21 years and had 0.05 percent or more, by weight, of alcohol in his or her blood.

"(iii) When the person was under 21 years of age and had a blood-alcohol concentration of 0.01 percent or greater, as measured by a preliminary alcohol screening test, or other chemical test.

"If the department determines that any of those facts were not proven by the preponderance of the evidence, the department shall rescind the order of suspension or revocation and, provided that the person is otherwise eligible, return or reissue the person's driver's license pursuant to Section 13551."

At the hearing, Rehman relied on subdivision (b)(2)(C)(i) of section 13557 (set out above) to argue that because his blood-alcohol content was not 0.08 percent or more, the department had to rescind the order of suspension. The hearing officer rejected that argument and sustained the order of suspension. The hearing officer determined that a blood-alcohol content of 0.04 percent or more was the proper standard for sustaining the order of suspension because subdivision (d) of section 23152 makes it "unlawful for any person who has 0.04 percent or more, by weight, of alcohol in his or her blood to drive a commercial motor vehicle."

Rehman offered the same argument to the trial court in support of his writ petition. The trial court found no ambiguity in the statutory directive in section 13557 requiring a blood-alcohol content of 0.08 percent or more to sustain a suspension of a license under section 13353.2. The court concluded, however, that this directive could not be harmonized with section 13353.2's requirement of a suspension based on a blood-alcohol content of only 0.04 percent or more. In light of the express legislative intent of conforming state law to a federal requirement imposing a standard of 0.04 percent on drivers of commercial vehicles (noncompliance with which could lead to the loss of federal funds), the trial court concluded "it was a drafter's oversight when Vehicle Code, section 13557 [subdivision] (b)(2)(C) was not amended to include a circumstance to cover commercial drivers with a .04%, or more, [blood-alcohol content]." Accordingly, the court denied Rehman's petition.

Rehman filed a timely notice of appeal.

## DISCUSSION

Because the facts are undisputed, the question before us regarding the interpretation of these apparently conflicting statutes is one of law that we review de novo. (*Nationwide Asset Services, Inc. v. DuFauchard* (2008) 164 Cal.App.4th 1121, 1125 [79 Cal.Rptr.3d 844].)

On its face, section 13557 requires evidence of a blood-alcohol content of 0.08 percent or more to sustain the suspension of a driver's license under section 13353.2, when section 13353.2 requires a blood-alcohol content of only 0.04 percent or more to suspend the license in the first place. Rehman contends that, contrary to the trial court's conclusion, the two statutes can be harmonized. He suggests that, with respect to commercial licenses, the Legislature might have intended the lower 0.04 percent standard to apply only to the *immediate* suspension in effect between arrest and the outcome of the administrative hearing, but intended the higher 0.08 percent standard to apply to the continuation of the suspension after the administrative hearing "since the driver's livelihood is directly affected" by the suspension. He further argues that "the continued suspension of a commercial driver's license is adequately handled by other Vehicle Code provisions." Specifically, he asserts that subdivision (a) of section 15300 provides for a one-year suspension of a commercial driver's license upon conviction of driving a commercial motor vehicle with a blood-alcohol content of 0.04 percent or more.[4] (See §§ 15300, subd. (a)(2), 23152, subd. (d).)

■ In interpreting statutes, if the "language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) ■ However, this " 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute." (*Ibid.*) We must strive to harmonize "provisions relating to the same subject matter . . . to the extent possible." (*Ibid.*) Therefore, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Ibid.*)

---

[4] Rehman also refers to subdivision (a) of section 15315, which provides that "[t]he department shall not issue a commercial driver's license to a person during a period in which the person is prohibited from operating a commercial motor vehicle, or the person's driving privilege is suspended, revoked, or canceled." He contends that under this provision, if the suspension of his driving privilege was continued under section 13557, "then his commercial driver's license would also be suspended." But section 15315 addresses only the *issuance* of a commercial driver's license, not the continued suspension of a commercial driver's license already issued, and thus that statute has no relevance here.

■ The shortcoming in Rehman's proffered harmonization of sections 13353.2 and 13557 is the lack of any true "immediate" suspension that takes effect upon arrest. While section 13353.2 does refer to "immediately suspend[ing]" the license, in operation the suspension is anything but immediate. This is so because the *effective date* of the suspension is either 30 days after the arresting officer or the department gives notice of the suspension (§ 13353, subd. (a)), or five days after the department gives written notice of its determination to sustain the suspension following the administrative hearing (§ 13558, subd. (d)). Until the effective date, the license holder continues to enjoy the privilege of driving by virtue of a temporary license. (See *id.*, subd. (e).) ■ Therefore, contrary to Rehman's proposal, the Legislature could not reasonably have contemplated using different levels of blood-alcohol content for different parts of the suspension.

■ We are therefore left with conflicting provisions that apply a higher blood-alcohol content standard in the review of an order of suspension issued based on a lower blood-alcohol content standard, which would lead to the absurd result of issuing orders of suspension that could never be effective and thus rendering section 13353.2, subdivision (a)(3) nugatory in some cases. "The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole." (*Silver v. Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].) Such a result is appropriate here, particularly when we look to the legislative purposes of these statutes.

In the history available for Assembly Bill No. 2520, enacted in the 2005–2006 Regular Session (which the department included in its opposition below), the Legislative Counsel's Digest does not explain the purpose in changing the standard for suspending a commercial license to 0.04 percent. (Legis. Counsel's Dig., Assem. Bill No. 2520 (2005–2006 Reg. Sess.) Stats. 2006, ch. 574.) However, according to the Assembly's August 16, 2006, floor analysis of the Senate's amendments to the bill, the purpose of the bill was to make "numerous changes to the Vehicle Code in order to conform state law to federal regulations mandated by the Federal Motor Carrier Safety Administration in the Motor Carrier Safety Improvement Act of 1999. The following items are conforming changes: [¶] a) Requires [the department] to immediately suspend the commercial driver's license of a driver when he or she has . . . [0].04 percent or more . . . of alcohol in his or her blood." (Assem. Conc. Sen. Amends., Assem. Bill No. 2520 (2005–2006 Reg. Sess.) as amended Aug. 7, 2006, pp. 1–2.)[5] This intentional incorporation of federal

[5] Federal law proscribes the operation of a commercial motor vehicle with more than 0.04 percent of blood alcohol (49 U.S.C. § 31310(a)) and includes provisions to induce state law compliance: "To avoid having amounts withheld from apportionment under section 31314 of

standards is also expressly recognized in the criminal statute directed at impaired commercial drivers (§ 23152, subd. (d)), which keeps the 0.04 percent standard in effect as long as it is a requirement of federal law (*id.*, subd. (e)).

The failure to amend section 13557 to reflect the addition of the 0.04 percent standard to section 13353.2 may have had its genesis in the department's September 2005 legislative proposal suggesting the necessary changes for compliance with federal law. Among the "minor amendments" the department identified was the need for a provision in section 13353.2 that "a driver of a vehicle that requires a commercial driver license *shall receive an administrative action* when a [0].04 blood alcohol content level or greater is found." (Italics added.) The department's proposal did not make any mention of the need to incorporate this new standard for commercial drivers among the specified findings in the procedural provisions of section 13557 as well.

■ Considering the administrative suspension process is intended to provide the public with added protection because the criminal process takes too long to resolve guilt (see *Lake v. Reed* (1997) 16 Cal.4th 448, 454–455 [65 Cal.Rptr.2d 860, 940 P.2d 311]), it is inconceivable the Legislature would enact a statute allowing the criminal conviction of a commercial driver with proof of a blood-alcohol content of only 0.04 percent or more (§ 23152, subd. (d)), and the suspension of a commercial license upon a determination of this fact (§ 13352, subd. (a)), but not intend for an administrative suspension to go into effect absent proof of the higher blood-alcohol content that is generally applicable to ordinary drivers. To avoid this absurd result and give effect to the manifest purpose of the statutes, we construe subdivision (b)(2)(C)(i) of section 13557 as including a provision that allows the department to sustain an order of suspension imposed under subdivision (a)(3) of section 13353.2 on a person for driving a vehicle that requires a commercial driver's license with a blood-alcohol content of 0.04 percent or more where there is proof by a preponderance of the evidence that the person's blood-alcohol content was 0.04 percent or more.[6]

---

this title, a State shall comply with the following requirements: [¶] . . . [¶] (3) The State shall have in effect and enforce a law providing that an individual with a blood alcohol . . . level at or above [0.04 percent] . . . when operating a commercial motor vehicle is deemed to be driving under the influence of alcohol." (*Id.*, § 31311(a).)

[6] This is not the first time that the Legislature has failed to keep in line the criteria for immediate suspension and the findings to sustain the suspension. Correcting an earlier disparity created the previous year (see Stats. 1993, ch. 899, §§ 1, 5, 9, pp. 5021, 5023, 5027–5028; Stats. 1993, ch. 1244, §§ 12.1, 15.5, 27, 28, pp. 7204, 7210–7211, 7224), the Legislature amended section 13353.2 in 1994 to allow the suspension of the license of a minor for driving with an alcohol level over 0.01 percent "as measured by a preliminary alcohol screening test, or other chemical test" or for having "0.05 percent . . . of alcohol in his or her blood"; section 13357 contained the same factors to sustain the suspension. (Stats. 1994, ch. 938, §§ 3, 9, pp. 5514,

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Nicholson, J., concurred.

---

5518–5519.) In 1999, the Legislature deleted the provision in section 13353.2 regarding a minor with an alcohol level of 0.05 percent (Stats. 1999, ch. 22, § 14, p. 67); however, it neglected to remove this factor from the list in section 13557, where the redundancy persists to this day (§ 13557, subd. (b)(2)(C)(ii)). The Legislature may wish to address this vestigial provision as well as the conflicting provisions addressed in this opinion.