[No. C061857. Third Dist. July 22, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
BRITTANEY DANIELLE MEYER, Defendant and Appellant.

## COUNSEL

Fred J. Scholz and Ryan N. Meyer for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, David A. Rhodes and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BLEASE, Acting P. J.**—In this case, on review from the Appellate Division of the Yolo County Superior Court, we hold that a person who *held* a commercial driver's license at the time of violation of a traffic offense, but who surrendered the license, is barred from completing traffic school in lieu of adjudicating the traffic offense pursuant to Vehicle Code section 42005,

subdivision (c), notwithstanding that the section refers to the present tense "holds a . . . commercial . . . license . . . ."[1]

Defendant Brittaney Danielle Meyer entered her plea of no contest to the infraction of driving 80 miles per hour on State Route 113, which has a posted speed limit of 65 miles per hour. (§ 22349, subd. (a).) She made a motion to attend traffic school in lieu of entry of judgment on the violation (§ 42005, subds. (a) & (b)), which the court denied on the basis that she *had* held a commercial driver's license at the time of the violation (§ 42005, subd. (c) (section 42005(c))) even though she had surrendered it before the motion and held only a noncommercial class C license at the time of the motion.[2]

She sought review of the order in the Appellate Division of Yolo Superior Court. (Pen. Code, § 1466.) The prosecution did not file an opposition. The appellate division issued an opinion, certified for publication (as amended May 26, 2009), that reversed the order.[3] Upon the filing of the opinion and record on transfer with this court (Cal. Rules of Court, rule 8.887(c)(2)(B)), we ordered the transfer of the case for review on our own motion (Cal. Rules of Court, rule 8.1008(a)). We shall affirm the order denying the motion.

## DISCUSSION

Section 42005(c) provides, "Pursuant to Title 49 of the Code of Federal Regulations, the court may not order . . . a person who *holds* a . . . commercial class C driver's license to complete a licensed traffic violator school . . . in lieu of adjudicating any traffic offense committed by the holder of a . . . commercial class C driver's license." (Italics added.) In an uncodified statement of intent, the Legislature said that it was making numerous changes to the Vehicle Code in order to conform with federal law, which included this prohibition on traffic school for commercial drivers. (Stats. 2004, ch. 952, §§ 1, 31.)

The cross-referenced federal regulatory title provides in pertinent part, "[A] State must not mask, defer imposition of judgment, or allow an individual to enter into a diversion program that would prevent a [commercially licensed] driver's conviction for any violation, in any type of motor vehicle, of a State

---

[1] All further undesignated references to sections are to the Vehicle Code.

[2] She testified that she had not made use of the commercial license in four years, was unaware that it was still valid because she had not completed a physical exam "in some time," had never driven a large commercial vehicle, and did not intend to operate a commercial vehicle "in the foreseeable future."

[3] The appellate division had initially certified the case for transfer to this court for decision in the first instance. We refused the transfer.

or local traffic control law . . . from appearing on the CDLIS driver record,[4] whether the driver was convicted for an offense committed in the State where the driver is licensed or another State." (49 C.F.R. § 384.226 (2009).) This part of title 49 is aimed at achieving state compliance with the federal statutory goal of compiling a record of *every* traffic violation of a commercially licensed driver.[5] (See 49 C.F.R. § 384.101(a) (2009).) This is toward the congressional goal of reducing truck and bus accidents through limiting a commercial driver to a single commercial license (49 U.S.C. § 31302; 49 C.F.R. § 383.1 (2009)) tracked through the CDLIS (Commercial Driver's License Information System).

The appellate division opinion relied on section 42005(c)'s use of the term "holds." Since this present tense is used in the same sentence regarding the restriction on a court's issuance of an order, and the Legislature *could have* employed the phrase "held at the time of the citation," the appellate division found the statute "more plain[ly] than ambiguous[ly]" was referring only to the latter point in time.

The court did not find any absurd consequences resulting from this interpretation. It acknowledged that it would be possible for commercial drivers to evade the recordkeeping purpose of federal law through the surrender of their licenses before the adjudication of their violations, and then reacquire the license after completing traffic school and masking the violation. However, after taking judicial notice of the official California handbook for commercial drivers, the court concluded that "the maze of requirements applicable to obtaining a commercial driver's license" made it unlikely that commercial drivers could "*easily* manipulate" the process. The court also did not believe that people intending a permanent surrender of a commercial license came within the federal objectives that the restriction furthered.

Defendant's opening brief in this court miscomprehends the nature of an order of transfer—which is for the purpose of reviewing the *propriety* of a ruling of an appellate division—and is devoted to arguing that the decision qualifies for publication.[6] She does, however, provide some argument on the merits of the dispute in her reply brief. Since we have undertaken review of

---

[4] "CDLIS driver record means the electronic record of the individual [commercially licensed] driver's status and history stored by the State-of-Record as part of the Commercial Driver's License Information System (CDLIS) established under 49 U.S.C. 31309." (49 C.F.R. § 383.5 (2009), italics omitted.)

[5] The federal statute (49 U.S.C. § 31311(a)(19)(B)) uses the broader term "motor vehicle," rather than limiting its reach only to violations while operating "commercial motor vehicles." (Cf. 49 U.S.C. § 31301(4) & (11) [definitions].)

[6] She purports to incorporate by reference her briefs on the merits in the appellate division. This is improper. (*People v. Abilez* (2007) 41 Cal.4th 472, 536 [61 Cal.Rptr.3d 526, 161 P.3d 58].)

the appellate department's decision on our own motion, we will not treat the absence of a cogent argument in her opening brief as a species of forfeiture. (*Beane v. Paulsen* (1993) 21 Cal.App.4th 89, 93, fn. 4 [26 Cal.Rptr.2d 486]; *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 592, fn. 8 [59 Cal.Rptr.3d 18].)

As the facts are not disputed, the question before us regarding the interpretation of section 42005(c) is one of law that we review de novo. (*Nationwide Asset Services, Inc. v. DuFauchard* (2008) 164 Cal.App.4th 1121, 1125 [79 Cal.Rptr.3d 844].)

■  If the language of a statute is clear and unambiguous, we do not have anything to construe and consequently do not need to resort to the various forms of indicia of legislative intent. (*Rehman v. Department of Motor Vehicles* (2009) 178 Cal.App.4th 581, 586 [100 Cal.Rptr.3d 510] (*Rehman*).) We agree with the appellate division that the use of the present tense in the context of a restriction on the power of the court to order traffic school, in lieu of entry of judgment on the violation, would at first blush seem to refer to the time of the entry of the order. We do not, however, find the failure to employ any form of the past tense determinative, because the Legislature has provided itself a "safety hatch" for inadvertent failures to make explicit provision for that focus. (§ 12 [present tense includes past and future].) We must therefore consider whether this literal application of the words of the statute comports with its purpose. (*Rehman, supra,* 178 Cal.App.4th at p. 586.)

■  The amendment to section 42005(c) unambiguously asserts the intent to give effect to federal law. Federal law, in turn, has the declared purpose of improving highway safety through making it easier to identify *all* traffic violations that a particular commercial driver commits, regardless of jurisdiction or type of vehicle at the time of the offense. The purpose is to identify the "worst of the worst" commercial drivers and prevent them from operating the large commercial vehicles that present a safety risk on the nation's highways.

The parties have not presented a factual or legal showing that there is an administrative mechanism in place designed to prevent a gaming of the system through surrender of a commercial license after a violation and its reacquisition after completion of traffic school, or that a commercial driver could not operate a vehicle without a license during this period. Therefore, the question is not whether it is cumbersome—and thus *unlikely*—that a commercial driver would resort to subterfuge to prevent a violation from appearing in the CDLIS, or that some commercially licensed drivers might permanently surrender their commercial licenses. It is nevertheless a *possibility*. Given that the "worst of the worst" would be the ones most likely or

highly motivated to cheat, it would not further the federal legislative purpose to leave a loophole such as this in place.

Consequently, we disagree with the conclusion of the appellate division. We therefore will affirm the order denying defendant's motion.

## DISPOSITION

The order is affirmed.

Raye, J., and Hull, J., concurred.