[No. C069483. Third Dist. Sept. 4, 2012.]

COUNTY OF SACRAMENTO, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
TUMBUR PURBA et al., Real Parties in Interest.

COUNSEL

Randolph Cregger & Chalfant, Robert L. Chalfant and Wendy M. Motooka for Petitioner.

No appearance for Respondent.

Wilcoxen Callaham, William C. Callaham and Craig J. Rolfe for Real Parties in Interest.

OPINION

BUTZ, J.—Petitioner County of Sacramento (the County) unsuccessfully moved for summary judgment in this tort action, which is premised on the alleged failure of the Sacramento County Public Conservator (the conservator) to warn a care facility adequately about a conservatee's history of violence. After placement at the facility, the conservatee injured one employee and killed another (Tumbur Purba and his wife, decedent Pausta Sibarani). The County had asserted, inter alia, that its agency was immune from suit under Welfare and Institutions Code section 5358.1[1] and consequently it did not have any derivative liability. The trial court, after finding the existence of a duty to warn adequately, ruled that "the immunity is not so broad" because "there is a duty that in essence super[s]edes the immunity . . . where someone is a real problem and dangerous to the public . . . ."

The County filed a petition in this court for a writ of mandate directing the trial court to set aside its order and issue a new one granting summary judgment on the basis of this statutory immunity. We issued an alternative writ, to which real parties in interest (Tumbur Purba and the children of the couple, to whom we will refer in the singular as "real party in interest") have filed a return. We agree section 5358.1 affords an absolute immunity. We will therefore issue a peremptory writ directing the trial court to vacate its order and issue a new one granting the County's motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*Standard of Review*

Under the "historic paradigm" for our de novo review of a motion for summary judgment (*Rio Linda Unified School Dist. v. Superior Court* (1997) 52 Cal.App.4th 732, 734–735 [60 Cal.Rptr.2d 710]), we first identify the

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

material issues framed in the pleadings. We then ordinarily determine whether a defendant's evidence establishes prima facie entitlement to judgment in the defendant's favor on these issues, after which we consider whether the opponent's evidence creates a factual conflict with respect to any of these issues that only a trier of fact can resolve. (*Ibid.*) In the present case, however, we can omit the latter two steps because the dispute involves only the *legal* significance of the material facts and not the existence of any disputes about them.

*Pleadings*

The real party in interest filed an amended complaint in January 2010. The pleading asserted causes of action for the wrongful death of decedent Sibarani, a survivor action for negligence, and the real party in interest's cause of action for negligence under the theories both of being a direct victim of negligence and of being a percipient family member witness of personal injuries to the decedent (e.g., *Newton v. Kaiser Foundation Hospitals* (1986) 184 Cal.App.3d 386, 389–390 [228 Cal.Rptr. 890] [discussing both theories]). The pleading asserted that the County was vicariously liable for the acts of negligence of its agents and representatives. (Gov. Code, § 820.)

The pleading alleged that conservatee Ofiu Fotu (the conservatee) had entered a plea of no contest to assaulting an employee of another care facility in 2005. The conservatee was granted formal probation. The conservator first recommended a placement at one care facility in 2007, then in December 2007 recommended placement of the conservatee in a second facility that employed the decedent and the real party in interest. The conservator was aware that the conservatee had a 20-year "history of violent attacks on others, [with] numerous criminal convictions involving violent crimes and mental disorders," but failed to warn the owners or employees of the care facilities (who would not have accepted the conservatee as a resident if fully informed). In September 2008, the conservatee fatally beat the elderly decedent with a wooden chair, and inflicted life-threatening injuries on her husband.

■ Causes of action for negligence require a plaintiff to establish a duty on the part of a defendant (in addition to the defendant's breach of that duty that was both the actual and proximate cause of the plaintiff's damages). (*Sagadin v. Ripper* (1985) 175 Cal.App.3d 1141, 1160 [221 Cal.Rptr. 675] (*Sagadin*).) ■ In the context of a public entity, liability for a breach of a statutory duty is *subject to* statutory immunities (Gov. Code, § 815, subd. (b)), which generally have preemptive effect regardless of whether they are included in the Government Claims Act itself (Gov. Code, § 810 et seq.). (See 1 Coates et al., Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2012) Overview of the Government Claims Act, §§ 1.13, 1.16, 1.17,

pp. 9, 11, 12; *id.*, General Immunities of Public Entities and Employees, § 10.74, pp. 703–704, 707 [Welf. & Inst. Code, § 5328.1 is among immunities to tort claim against public entity]; accord, *Gates v. Superior Court* (1995) 32 Cal.App.4th 481, 510 [38 Cal.Rptr.2d 489] [general rule is that statutory immunity, even for intentional conduct, overrides statutory liability].) The existence of an immunity despite a duty to warn adequately on the part of the County is accordingly a material issue framed within this pleading. (*Gates, supra*, 32 Cal.App.4th at p. 494 [if tort liability of public entity at issue, complaint must plead facts necessary to place cause of action outside the breadth of any potential statutory immunity].)

*Evidence*

The statement of undisputed facts confirmed the well-pleaded material factual allegations of the complaint. The real party in interest's opposition and the County's reply do not create triable issues of *material* fact in connection with the immunity issue, so we do not need to consider the evidentiary underpinnings of these facts in any detail.

The conservator recommended a placement for the conservatee at an unsecured care facility in fall 2007, which the trial court confirmed. The conservator notified the administrator of the facility that the conservatee had assaulted an employee in a previous placement. The parties dispute whether the conservator provided details about that incident, or any information about the rest of the conservatee's history of violence (knowledge of which the County also disputes). The administrator of the initial facility recommended a transfer of the conservatee to a related unsecured facility where the decedent and her husband worked. In April 2008, the conservator notified the court of the transfer. In September 2008, the conservatee, who had not previously manifested any animosity toward the real party in interest's decedent or her husband, killed the decedent and seriously injured the husband (leaving him with permanent brain injury). The administrators of the two facilities asserted that they relied on conservators to provide background information on prospective placements; if fully informed about his history of violence, they would not have accepted the conservatee as a resident of either facility.

*Ruling*

Concerned about a situation where a conservator is in possession of material facts that would cause a care facility to reject a proposed placement, the trial court as a matter of "public policy" would not interpret section 5358.1 as providing immunity in such circumstances. It believed *Johnson v. State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352] (*Johnson*), a decision focused on the issue of duty (and which predated the enactment of

§ 5358.1's immunity), was dispositive. It distinguished cases to the contrary solely on the ground that they involved "immunity provisions other tha[n] . . . section 5358.1." Its order denying the County summary judgment did not respond to the County's argument at the hearing that the court was conflating the issue of whether there *should be* liability under the present facts with the legislative policy decision to grant immunity regardless of the underlying facts.

## DISCUSSION

The statutory language with which we are concerned is succinct. To restate it in positive language, "[A] conservator . . . shall [not] be held civilly . . . liable for any action by a conservatee." (§ 5358.1.)

We first reject at the outset an artificial parsing that interlaces real party in interest Purba's argument throughout his brief, in which he argues the present action is premised not on the act of the *conservatee* in inflicting death and personal injuries, but on the act of the *conservator* in failing to warn the facility adequately about the danger that the conservatee represented.[2] An alleged act of negligence on a conservator's part would be legally meaningless in the absence of a damage-inflicting act of a conservatee. (*Sagadin, supra*, 175 Cal.App.3d at p. 1160 [damages are an essential element of an action in tort]; cf. *Michael E. L. v. County of San Diego* (1986) 183 Cal.App.3d 515, 530 [228 Cal.Rptr. 139] (*Michael E. L.*) [§ 5154; claim of failure to warn necessarily arises from immunized act of detainee].) This parsing additionally would leave the immunity statute without any practical effect, because real party in interest Purba does not suggest any manner in which a conservator would have civil liability for a conservatee's act *without* some act (or dereliction) on the conservator's own part. We cannot accord such an interpretation to the statute. (Cf. *Storch v. Silverman* (1986) 186 Cal.App.3d 671, 678 [231 Cal.Rptr. 27] (*Storch*) [rejecting proffered exception to "reporter's immunity" because it would swallow up the immunity].)

We also reject as irrelevant real party in interest Purba's effort to identify public policies underlying the statutory scheme that (inter alia) created the

---

[2] In this vein, real party in interest Purba cites *Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1502–1503 [35 Cal.Rptr.3d 596], which posits various hypotheticals involving a mental health professional's own negligent *treatment* of a 72-hour detainee that results in injuries to the detainee or others, and queries whether the Legislature intended to extend immunity under section 5154 for resulting acts of the detainee after release (though the court ultimately concluded it did not need to resolve this question). (*Coburn*, at p. 1505.) Whatever the merits to these musings, the present case does not present any issue of the effect of an act of the conservator *on the conservatee* that *resulted in* the damage-inflicting act of the conservatee. We thus do not find this an instructive basis for focusing on an act of a conservator separate from a later act on a conservatee's part.

procedures for establishing a conservatorship for a party who is mentally disordered (the Lanterman-Petris-Short Act (the LPS Act); Welf. & Inst. Code, § 5000 et seq.). The Legislature indeed expressly declared its intent "[t]o guarantee and protect public safety" (*Id.*, § 5001, subd. (c)). Nothing in this context, however, indicates a concern with affording protection to the public from *conservators*, as opposed to the various levels of involuntarily confined mentally disordered persons (including conservatees) who are the subjects of the LPS Act. Nor does real party in interest Purba identify any reason to make *this* public policy a first among equals under the LPS Act, which also declares that conservators need to strike a balance in placing even criminal defendants—declared incompetent—between the *least restrictive alternative* and the protection of the public. (*Id.*, § 5358.) Finally, the fact that a conservator can *obtain* a criminal history "when needed" (Pen. Code, § 11105.1) and must "render *to the court* a written report of investigation" (Welf. & Inst. Code, § 5354, italics added) for a hearing on establishing a conservatorship, which must include a laundry list of pertinent information that notably omits any express reference to a criminal history, does not establish any public policy *mandating* disclosure of this information to potential facilities. The cited policies consequently do not provide any guidance on the interpretation of the immunity statute.

■ Returning to the plain language of section 5358.1, civil liability does not attach to a conservator for the actions of a conservatee. Real party in interest Purba has not demonstrated any ambiguity in this language, for which reason we do not need any resort to indicia of legislative intent. (*People v. Meyer* (2010) 186 Cal.App.4th 1279, 1283 [112 Cal.Rptr.3d 889].) However, real party in interest Purba contends immunity under the present circumstances is an absurd result warranting our disregard of the plain language of the statute. (Compare, e.g., *Meyer, supra*, 186 Cal.App.4th at p. 1283 [no absurd result] with *Rehman v. Department of Motor Vehicles* (2009) 178 Cal.App.4th 581, 586, 588 [100 Cal.Rptr.3d 510] [absurd result].) We thus consult evidence of intent.

■ In determining what would be an absurd result for purposes of the scope of a statutory immunity, we presuppose that there has been an otherwise actionable breach of the conservator's duty to give adequate warnings. In doing so, we take the risk of being accused of "jumping over the duty horse into the immunity cart" (*Hefner v. County of Sacramento* (1988) 197 Cal.App.3d 1007, 1013 [243 Cal.Rptr. 291], disapproved on the issue of right to jury trial on elements of immunity in *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73–74 & fn. 3 [109 Cal.Rptr.2d 1,

26 P.3d 332]).[3] As we have taken pains to make clear, however, the nature of the conduct giving rise to liability then drops out of the analysis, lest we "create[] an unresolvable paradox[,] for it is axiomatic that governmental liability cannot exist when the complained[-]of act falls within the realm of [an] immunity." (*Whitcombe v. County of Yolo* (1977) 73 Cal.App.3d 698, 704 [141 Cal.Rptr. 189].) The immunity is *independent* of the liability; it does not deny the tortious nature of the conduct, but represents a decision that the status of a defendant taking the action deserves protection no matter what the circumstances. (*Whitcombe*, at pp. 704–705, cited approvingly in *Williams v. State of California* (1983) 34 Cal.3d 18, 22–23 [192 Cal.Rptr. 233, 664 P.2d 137] [beyond the threshold of duty remains the barrier of immunity].)

In support of its motion, the County provided a copy of a Senate Judiciary Committee analysis of Assembly Bill No. 1872 (1972 Reg. Sess.), the 1972 legislation enacting inter alia section 5358.1 (Legis. Counsel's Dig., Assem. Bill No. 1872 (1972 Reg. Sess.) 2 Stats. 1972, Summary Dig., p. 74). This analysis expressed the intent to provide conservators with a similar immunity from liability for a conservatee's acts that other professionals and entities in the mental health system possessed. "The hospitals and institutions providing care and all the medical professionals have been exempted from liability but the conservator has not." Two remarkable aspects of this indicium of intent are the absence of any description of the immunity as being conditional in any respect, and the express description of it being the equivalent of immunities that other medical professionals possessed. Notably, real party in interest Purba does not address this *specific* expression of legislative intent (as opposed to his references to general intent and public policy concerns), except in the context of his flawed analysis regarding the absence of any express reference in the statute to the *conservator's* acts.

In light of this legislative history, the trial court was incorrect in disregarding other decisions merely because they addressed different statutes. Of particular relevance is the statute affording immunity to all of the various mental health professionals who either supervise or are directly responsible for the treatment of 72-hour detainees (§ 5150), along with any peace officers involved in the original detention: All of these persons "shall not be held

---

[3] We therefore do not need to discuss whether *Johnson, supra,* 69 Cal.2d at pages 785 to 786, establishes the County's liability for breach of a duty to warn adequately. The case is otherwise not instructive on issues of immunity, because we are not called upon to resolve whether a mandatory or discretionary duty is at issue (*id.* at pp. 786–798), nor does the case at bar involve an immunity for a specific act on the part of a public employee such as the decision to parole or release a prisoner and impose conditions (*Johnson,* at pp. 798–799, limited in *County of Sacramento v. Superior Court* (1972) 8 Cal.3d 479, 484 [105 Cal.Rptr. 374, 503 P.2d 1382] [holding does not apply to *absolute* immunity based on *acts of escapee* rather than *decision* to release].)

civilly . . . liable for any action by a person" released either at or before the end of the 72-hour period. (§ 5154, subds. (a), (b), (c).)

The treating psychiatrist in *Michael E. L., supra*, 183 Cal.App.3d 515, released a detainee (who had threatened his wife) after only 24 hours, and a month later the detainee killed the wife. (*Id.* at pp. 520–521.) The action asserted a failure to warn or protect the wife. (*Id.* at p. 528.) In keeping with the divide between duty and immunity, *Michael E. L.* summarized its holding as finding "a duty to exercise reasonable care to avoid harm to the wife at the hands of her husband, but the psychiatrist and thus the County are entitled to immunity." (*Id.* at p. 519.) "While [the] claim against the County rests on a . . . failure to warn or . . . to protect . . . , that claim necessarily arises out of the murder . . . , a postrelease activity. As that action is immune under section 5154, it follows that the claimed failure to warn is also immune. . . . The conduct of [the psychiatrist] in the evaluation of [the detainee] and his early release is entitled to the section 5154 immunity . . . ." (*Id.* at p. 530.)

This immunity was also applied in *Johnson v. County of Ventura* (1994) 29 Cal.App.4th 1400 [35 Cal.Rptr.2d 150] to peace officers under a set of facts even more extreme than in the case at bar. A 72-hour detention was to follow once a hospital patient recovered from self-inflicted wounds, but the patient absconded. Even though the police were aware of these circumstances, and knew that the patient had been breaking into neighborhood homes after leaving the hospital, they allowed him to return on his own to the hospital after tracking him down. Shortly afterward, he broke into a home and fatally stabbed an elderly woman. This decision of the officers (and the public entity) was immune from liability for the patient's actions because the act was in the course of an *anticipated* detention (*Id.* at pp. 1404, 1407) and thus the *anticipated* detainee's act did not give rise to liability. The analysis in neither *Johnson v. County of Ventura* nor *Michael E. L.* suggests that protection of the public at large or a particular plaintiff is a basis for a limitation on the immunity for the acts of a detainee.

Although not involving the immunity of a mental health professional (and thus not directly within the *legislative* focus in enacting Welf. & Inst. Code, § 5358.1), there is parallel language in Penal Code section 1618, and therefore its *judicial* interpretation gives some guidance in our context. In pertinent part, it provides that the administrators, supervisors, and treating staff of "CONREP,"[4] a program "designed to rehabilitate mentally disordered offenders" (*Ley v. State of California* (2004) 114 Cal.App.4th 1297, 1301 [8 Cal.Rptr.3d 642] (*Ley*)), "shall not be held . . . civilly liable for any criminal acts committed by . . . persons on parole or judicial commitment status who

---

[4] "CONREP" is the acronym for the Forensic Conditional Release Program. (Pen. Code, § 1615 et seq.)

receive supervision or treatment. This waiver of liability shall apply to employees of the State Department of State Hospitals, the Board of Parole Hearings, and the agencies or persons under contract to those agencies, who provide screening, clinical evaluation, supervision, or treatment to mentally ill parolees or persons under judicial commitment or considered for placement under a hold by the Board of Parole Hearings" (Pen. Code, § 1618). Ley was a CONREP patient who sustained injuries at the hands of another patient. (*Ley, supra,* at p. 1300.) As a matter of general principle, *Ley* stated that a statute "specifically preclud[ing] civil liability for a defendant's particular conduct accords such defendant absolute immunity," in which case a plaintiff cannot base an action on the *manner* in which the defendant "performed the immunized act." (*Id.* at p. 1303.)

*Ley* found the language of Penal Code section 1618 came within this category of immunity, and was akin to Welfare and Institutions Code section 5154 or other similar statutes (such as those granting immunity for reporting suspected child abuse)[5] that courts have interpreted as providing *absolute* immunity. (*Ley, supra,* 114 Cal.App.4th at p. 1304.) *Ley* also noted that the immunity at issue was not qualified in any manner, which distinguished it from immunities *expressly* limited in scope. (*Id.* at pp. 1303–1304.) Finally, *Ley* found that absolute immunity in this context would not be contrary to legislative expectations because it is consistent with "longstanding policy" to immunize "public agencies and employees for decisionmaking about whether and how to confine mentally ill patients" lest the spectre of liability chill their functioning. (*Ley,* at p. 1305.) Moreover, in the absence of immunity a program such as CONREP, necessarily involving judgment calls about a potentially dangerous category of individuals, could not continue to exist if liability were the rule for every mistake (making public entities the insurers of the general public). (*Ibid.*) Real party in interest Purba points out that conservatees also include those who pose a danger only to themselves, not others (as in CONREP), but section 5358.1 does not itself draw any such distinction in immunity for the acts of conservatees.

The County cites additional authority identifying other immunities as absolute in the context of mental health care. (E.g., Gov. Code, §§ 854.8, 856.2.) However, we think it would be an exercise in *"paint[ing]* the lily"[6] to pursue additional analysis devoted to these examples.

---

[5] In *Storch, supra,* 186 Cal.App.3d at pages 678 to 680, the court held that absolute immunity was essential for reporters of suspected child abuse, because it is too easy to plead around a qualified immunity and there would not be any purpose otherwise to grant immunity to *well-founded* suspicions of abuse. (Accord, *Krikorian v. Barry* (1987) 196 Cal.App.3d 1211, 1215 [242 Cal.Rptr. 312] [citing *Storch*].) Even though section 5358.1 is not framed in exactly the same manner, these concerns are not any less true.

[6] Shakespeare, King John, act IV, scene 2, line 11, italics added.

■   We therefore conclude the trial court erred in refusing to grant the County's motion for summary judgment on this basis. We will grant the requested relief.

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its order denying the County's motion for summary judgment and issue a new order that grants the motion. It shall thereafter enter judgment in favor of the County. The County shall recover its costs in this proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

Raye, P. J., and Murray, J., concurred.