[No. S131052. Dec. 17, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JOEY R. WATSON, Defendant and Appellant.

824

## COUNSEL

Linda C. Rush, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Donald E. de Nicola, Deputy State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Deborah J. Chuang, Margaret E. Maxwell and Susan S. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GEORGE, C. J.—Penal Code section 2684[1] provides for the transfer of a mentally ill prisoner to a state hospital under the jurisdiction of the State Department of Mental Health if it is determined that such a transfer would expedite the prisoner's rehabilitation. A prisoner transferred pursuant to this statute is to remain in the state hospital "until in the opinion of the superintendent [of the hospital] the person has been treated to the extent that he or she will not benefit from further care and treatment in the state hospital." (§ 2684.) In the present case we must decide whether a person transferred from a state prison to Atascadero State Hospital (Atascadero) for acute mental health treatment pursuant to section 2684 is subject to prosecution under section 4501.5, which provides that any person "confined in a state prison" who commits a battery upon a nonprisoner is guilty of a felony. Section 4504 defines a person "confined in a 'state prison'" as an inmate confined in certain prisons specified in section 5003, which list does not include Atascadero, as well as a person who, at the time of the offense, is "temporarily outside the walls or bounds of the prison." (§ 4504, subds. (a), (b).)

For the reasons set forth below, we conclude that a prisoner transferred to Atascadero pursuant to section 2684 is a person "confined in a state prison,"

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

because such a prisoner is "temporarily outside the walls or bounds of the prison" within the meaning of that phrase as defined by section 4504, subdivision (b). Therefore, a section 2684 transferee is subject to prosecution for battery under section 4501.5 and to the increased punishment provided upon conviction under that statute. Accordingly, we reverse the Court of Appeal's decision to the contrary.

I

The facts underlying this case are not in dispute. While serving a prison sentence, defendant Joey R. Watson was transferred from a state prison to Atascadero for mental health care treatment pursuant to section 2684.[2] During the admissions process at Atascadero, a registered nurse directed defendant to shower and get dressed. Upon leaving the shower, defendant lunged at the nurse and struck him in the face two or three times.

Defendant pleaded no contest to the offense of committing battery by a prisoner on a nonconfined person, in violation of section 4501.5, and admitted one prior serious or violent felony conviction within the meaning of California's "Three Strikes" law. (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i).) He was sentenced to four years in state prison. The appellate court reversed the judgment, holding that it was legally impossible for defendant to have violated section 4501.5, because he had been transferred from prison to Atascadero and thus no longer was "confined in a state prison." In response to the People's petition for rehearing, the Court of Appeal acknowledged two Department of Corrections and Rehabilitation, Division of Adult Operations regulations that conflicted with the court's interpretation of sections 2684 and 4504, subdivision (b), the latter of which section sets forth the relevant definition of the phrase " 'confined in' a prison." The appellate court, although concluding that deference to these regulations was unwarranted, modified the opinion to acknowledge but reject this regulatory authority, and thereafter denied plaintiff's petition for rehearing.

It is questionable whether defendant's claim is cognizable after a no contest plea. (§ 1237.5; *People v. Padfield* (1982) 136 Cal.App.3d 218, 227 [185 Cal.Rptr. 903].)[3] However, review in this court was sought and granted solely on the issue of whether an inmate who is under a prison sentence and

---

[2] Section 2684, subdivision (a), provides for the transfer of mentally ill prisoners to state hospitals. Upon certification by the Secretary of Corrections and Rehabilitation and with the approval of the Director of the State Department of Mental Health, "the superintendent of the hospital shall receive the prisoner and keep him or her until" the superintendent of the hospital determines treatment no longer is needed. (§ 2684, subd. (a).)

[3] The proper procedure would have been for defendant to enter a " 'slow plea,' " submitting the issue of his guilt of the charged offense on the basis of the preliminary hearing transcript or

who has been transferred to a state hospital pursuant to section 2684 is subject to punishment under section 4501.5. Accordingly, because the foundational issue of appealability is not before us, we decide only the substantive issue presented.

## II

■ Although the crime of battery frequently constitutes a misdemeanor, section 4501.5 makes it a felony for any person confined in a state prison to commit a battery upon a nonprisoner.[4] The term "confined in a state prison" is defined by section 4504. Section 4504, subdivision (a) provides, in relevant part, that a "person is deemed confined in a 'state prison' if he is confined in any of the prisons and institutions specified in Section 5003 by order made pursuant to law . . . ." Section 5003, in turn, provides that the Department of Corrections and Rehabilitation has jurisdiction over specified prisons and institutions.[5] Atascadero is not included among the prisons and institutions listed in section 5003. Section 4504, subdivision (b) provides that a person

---

other documentation, and then to appeal from the trial court's judgment of guilt. (E.g., *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 600, 602–603 [119 Cal.Rptr. 302, 62 P.2d 1086].)

[4] Section 4501.5 provides: "Every person confined in a state prison of this state who commits a battery upon the person of any individual who is not himself a person confined therein shall be guilty of a felony and shall be imprisoned in the state prison for two, three, or four years, to be served consecutively."

[5] Section 5003 provides:

"The department has jurisdiction over the following prisons and institutions:

"(a) The California State Prison at San Quentin.

"(b) The California State Prison at Folsom.

"(c) The California Institution for Men.

"(d) The California Institution for Women.

"(e) The Deuel Vocational Institution.

"(f) The California Medical Facility.

"(g) The Correctional Training Facility.

"(h) The California Men's Colony.

"(i) The California Correctional Institution at Tehachapi.

"(j) The California Rehabilitation Center.

"(k) The California Correctional Center at Susanville.

"(l) The Sierra Correctional Center.

"(m) The Richard J. Donovan Correctional Facility at Rock Mountain.

"(n) Mule Creek State Prison.

"(o) Northern California Women's Facility.

"(p) Pelican Bay State Prison.

"(q) Avenal State Prison.

"(r) California State Prison—Kings County at Corcoran.

"(s) Chuckawalla Valley State Prison.

"(t) Those other institutions and prison facilities as the Department of Corrections or the Director of Corrections may be authorized by law to establish, including, but not limited to, prisons in Madera, Kern, Imperial, and Los Angeles Counties."

also is deemed "confined in" a prison if "at the time of the offense, he is *temporarily* outside its walls or bounds for the purpose of serving on a work detail or for the purpose of confinement in a local correctional institution pending trial or for any other purpose for which a prisoner may be allowed temporarily outside the walls or bounds of the prison, but a prisoner who has been released on parole is not deemed 'confined in' a prison for purposes of this chapter." (Italics added.)

Additionally, the term "prison" is defined in section 6082, which states that with reference to statutes commencing with section 4500, the word "prisons" refers to "hospitals and institutions for the confinement, treatment, employment, training and discipline of persons in the legal custody of the Department of Corrections."

Defendant was serving a prison sentence under a judgment committing him to the custody of the Department of Corrections and Rehabilitation for a term of years, but was transferred to Atascadero pursuant to section 2684, which provides for the transfer of mentally ill prisoners to state hospitals. Specifically, section 2684, subdivision (a) states: "If, in the opinion of the Director of Corrections, the rehabilitation of any mentally ill, mentally deficient, or insane person confined in a state prison may be expedited by treatment at any one of the state hospitals under the jurisdiction of the State Department of Mental Health or the State Department of Developmental Services, the Director of Corrections, with the approval of the Board of Prison Terms for persons sentenced pursuant to subdivision (b) of Section 1168, shall certify that fact to the director of the appropriate department who shall evaluate the prisoner to determine if he or she would benefit from care and treatment in a state hospital. If the director of the appropriate department so determines, the superintendent of the hospital shall receive the prisoner and keep him or her until in the opinion of the superintendent the person has been treated to the extent that he or she will not benefit from further care and treatment in the state hospital."

In the present case, the Court of Appeal concluded that after his transfer to Atascadero defendant was not "confined in a 'state prison'" within the meaning of section 4504, subdivision (a), because Atascadero is not included among the prisons and institutions listed in section 5003. Additionally, relying upon *People v. Superior Court (Ortiz)* (2004) 115 Cal.App.4th 995 [9 Cal.Rptr.3d 745] (*Ortiz*), the appellate court concluded that a prisoner transferred to Atascadero pursuant to section 2684 is not "temporarily" outside the

prison walls and, therefore, not " 'confined in' a state prison" within the meaning of section 4504, subdivision (b). Finally, the court concluded that Atascadero is not a "state prison" under section 6082, because section 2684 inmates transferred to Atascadero are no longer in the custody of the Department of Corrections and Rehabilitation, but are in the custody of Atascadero, which is under the jurisdiction of the State Department of Mental Health. As noted above, the court also discounted the significance of two Department of Corrections and Rehabilitation, Division of Adult Operations regulations that conflicted with its conclusion regarding the temporary nature of a section 2684 transfer.

## III

We must determine whether the Legislature intended that a person who is incarcerated pursuant to a judgment committing him to state prison but who, during the prison term established by the sentence, is transferred to Atascadero pursuant to section 2684, is subject to the enhanced penalty provisions applicable to crimes committed by prisoners as set forth in section 4501.5. We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726]; accord, *City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 625 [26 Cal.Rptr.3d 304, 108 P.3d 862].) The objective of a court construing a statute is "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." (*Hassan v. Mercy American River Hospital, supra,* 31 Cal.4th at p. 715; accord, *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1087 [29 Cal.Rptr.3d 234, 112 P.3d 623].)

As a threshold matter, we agree with the Court of Appeal that Atascadero is not a " 'state prison' " within the meaning of section 4504, subdivision (a), because it is not one of the prisons and institutions listed in section 5003. Nonetheless, as outlined above, section 4504, subdivision (b), expands the definition of " 'confined in' a prison" to include prisoners who are temporarily outside the walls of a prison "for the purpose of serving on a work detail or for the purpose of confinement in a local correctional institution

pending trial or for any other purpose for which a prisoner may be allowed temporarily outside the walls or bounds of the prison . . . ." Defendant was not serving on a work detail and was not confined in a local correctional institution. Accordingly, we must decide whether the transfer of a person, such as a defendant, who has been committed to serve a sentence in state prison, to Atascadero pursuant to section 2684, constitutes "any other purpose for which a prisoner may be allowed temporarily outside the walls or bounds of the prison" under section 4504, subdivision (b). For the reasons set forth below, we conclude that it does.

Section 2684 does not explicitly address the permanency of a transfer to Atascadero or to another state hospital, and no other statute explains the meaning of the word "temporarily," as that term is used in section 4504, subdivision (b). Section 2684 does specify, however, that such a transfer is for an indefinite period, and does provide that the superintendent of the hospital shall keep the prisoner "until in the opinion of the superintendent the person has been treated to the extent that he or she will not benefit from further care and treatment in the state hospital." (§ 2684, subd. (a).) Section 2685 further provides that "[w]hen in the opinion of the superintendent the mentally ill, mentally deficient or insane prisoner has been treated to such an extent that such person will not benefit by further care and treatment in the state hospital, the superintendent shall immediately notify the Director of Corrections of that fact. The Director of Corrections shall immediately send for, take and receive the prisoner back into prison. The time passed at the state hospital shall count as part of the prisoner's sentence."

■ Moreover, as these provisions make plain, the transfer is for an unspecified period within the term of imprisonment prescribed by the inmate's sentence. Unlike a person committed to a state hospital as a mentally disordered offender or sexually violent predator, a prisoner who is transferred pursuant to section 2684 still is serving a sentence of a term of years in state prison and is confined pursuant to a judgment committing him or her to confinement in the state prison. In the context of the inmate's commitment to state prison for a term of years, a transfer to a state hospital does not constitute a permanent commitment for a specified term. Rather, the foregoing statutes contemplate that a prisoner's transfer to a state hospital is temporary, and that upon completion of a successful treatment program, the prisoner will be returned to state prison for completion of the term of confinement prescribed by his or her sentence, with time spent in the hospital

credited toward completion of the term imposed by the sentence.[6] Indeed, a section 2684 transferee will never *permanently* remain a section 2684 transferee, because as set forth by the State Department of Mental Health on a chart on its Web site concerning Atascadero, the "Disposition Alternatives" applicable to such a transferee are parole, a return to the Department of Corrections and Rehabilitation, or remaining at Atascadero pursuant to a civil commitment (see Pen. Code, § 2960 et seq. [mentally disordered offender]; Welf. & Inst. Code, § 6600 et seq. [sexually violent predator]). (See <http://www.dmh.ca.gov/services_and_programs/state_hospitals/Atascadero/Legal_Commitments.asp> [as of Dec. 17, 2007].) Thus, although a prisoner transferred by the Department of Corrections and Rehabilitation pursuant to section 2684 is located at Atascadero for treatment, that transfer remains in effect only for some indefinite period within the duration of the person's prison sentence, and is temporary in relation to that sentence.

The Court of Appeal concluded to the contrary, reasoning only that "inmates are *transferred* to Atascadero for treatment, and that may be permanent. Moreover, the Department of Corrections has no power to control the inmates after the transfer has occurred."

The circumstance that a prisoner transferred to Atascadero for mental health treatment pursuant to section 2684 *may* never return to prison in the event the prisoner never sufficiently recovers from his mental illness, is immaterial to the question of whether a transfer under that provision is "temporary" within the meaning of section 4504, subdivision (b). The same result might occur if a prisoner is transferred to local custody for a lengthy trial and ultimately is sentenced to time served, yet it is clear that such a prisoner's confinement comes within the terms of section 4504, subdivision (b). Indeed, as noted above, although a prisoner transferred to Atascadero pursuant to section 2684 may remain at the hospital, and indeed may remain hospitalized after completion of the prisoner's sentence, no person under sentence to a term in state prison permanently will retain the status of a section 2684 transferee, because the prisoner will be returned to prison or (if the prison sentence has

---

[6] Defendant urges us to apply the rule of lenity—that language in a penal statute that truly is susceptible of more than one reasonable construction in meaning or application ordinarily is construed in the manner more favorable to the defendant. (*People v. Canty* (2004) 32 Cal.4th 1266, 1277 [14 Cal.Rptr.3d 1, 90 P.3d 1168].) Because we conclude that the plain language of the relevant statutes supports our conclusion that a prisoner transferred to Atascadero pursuant to section 2684 is only temporarily outside the prison walls, the statutes are not susceptible of more than one reasonable construction and we appropriately do not invoke the rule of lenity.

expired) either will be released or remain in the hospital pursuant to a civil commitment.

The Court of Appeal placed considerable reliance upon *Ortiz, supra,* 115 Cal.App.4th 995, but we are not persuaded by the court's reasoning or conclusion in that case. In *Ortiz,* the court considered whether Atascadero, because it houses mentally ill inmates transferred from prison pursuant to section 2684, qualifies as a "state prison" or a "place where prisoners of the state are located under the custody of prison officials," as contemplated by section 4573.6, which proscribes possession of a controlled substance by "any person" in a place where inmates are located. The court examined sections 4504 and 6082 and concluded that mentally ill inmates transferred to Atascadero pursuant to section 2684 are in the custody of the superintendent of the hospital and of the peace officers employed by the hospital, but they are neither in prison pursuant to section 4504 nor placed in the custody of prison officials pursuant to section 6082.[7]

Although, as we observed above, there is reference in section 6082 to the concept of an inmate's legal custody, and thus that statute may be relevant to the determination of whether Atascadero constitutes a prison in other contexts, the identity of the official confining a transferred inmate has no relevance to the determination of whether the custody is temporary, or whether a prisoner is subject to felony prosecution for battery upon a nonprisoner under *section 4501.5,* the scope of which is defined specifically by section 4504. The latter statute makes no reference to legal or other custody; it speaks solely to a prisoner's location either in a specified prison or temporarily outside the prison walls.[8]

Similarly, the Court of Appeal's focus upon whether the Department of Corrections and Rehabilitation has the authority to "control" inmates after a

---

[7] Ultimately, the court concluded in *Ortiz* that section 4573.6 nonetheless barred the possession of controlled substances by employees or other persons at Atascadero, because inmates transferred to that institution are held in the custody of peace officers employed by the hospital, rendering Atascadero a "place where prisoners of the state are located under the custody of prison officials," pursuant to section 4573.6. (*Ortiz, supra,* 115 Cal.App.4th at p. 1002.)

[8] Indeed, the court in *Ortiz* acknowledged "that section 4504, subdivision (b) defines confinement for the sole purpose of determining whether an inmate is guilty of committing a crime while in prison," and that statute has no bearing upon the interpretation of section 4573.6. (*Ortiz, supra,* 115 Cal.App.4th at p. 1001.) Nonetheless, to the extent the court concluded in *People v. Superior Court (Ortiz), supra,* 115 Cal.App.4th 995, that a transfer to Atascadero pursuant to section 2684 is not "temporary" within the meaning of section 4504, subdivision (b), we disapprove its reasoning, for the reasons outlined above.

transfer to Atascadero is erroneous. Section 4504, subdivision (b) broadly defines " 'confined in' a prison" to include "*any* other purpose" for which a prisoner may be allowed "temporarily outside the walls or bounds of the prison," and makes no reference to the retention of custody or control by the department during the prisoner's absence. (§ 4504, subd. (b), italics added.) To the extent the Court of Appeal assumed that transfers *never* can be temporary, the plain language of sections 2684 and 2685 belies that conclusion.

We observe that section 6082 sets forth an alternative definition of prisons, encompassing "all facilities, camps, *hospitals* and institutions for the confinement, *treatment,* employment, training and discipline of *persons in the legal custody of the Department of Corrections*" (§ 6082, italics added), and that Atascadero might constitute a prison under this definition. Indeed, the Court of Appeal, as well as the parties' briefing in this court, focused heavily upon whether prisoners transferred to Atascadero pursuant to section 2684 remain in the "legal custody" of the Department of Corrections and Rehabilitation for purposes of section 6082. But because the definitions contained in section 4504 *specifically* govern the scope of section 4501.5, we need not and do not decide whether the definition of "prisons" in section 6082 independently renders prisoners transferred to Atascadero pursuant to section 2684 subject to the enhanced penalty provisions of section 4501.5, or whether section 2684 transferees remain in the legal custody of the Department of Corrections and Rehabilitation so that Atascadero would, in any event, be classified as a "prison" under section 6082.

Our conclusion that a transfer to Atascadero pursuant to section 2684 is temporary pursuant to section 4504, subdivision (b) finds support in the Department of Corrections and Rehabilitation, Division of Adult Operations administrative regulations.[9] California Code of Regulations, title 15, section 3360, subdivision (b) provides that "[w]hen an inmate is found to require mental health care not available within [the Department of Corrections and Rehabilitation], but which is available in the Department of Mental Health, the case will be referred to the director for consideration of *temporary transfer* to that department pursuant to Penal Code section 2684." (Italics added.) The regulations further specify that "[i]nmates . . . housed in Department of Mental Health hospitals remain under the jurisdiction of the

---

[9] Although not binding upon courts, administrative interpretations can be persuasive in construing statutory language. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1388 [241 Cal.Rptr. 67, 743 P.2d 1323].)

department and shall not be permitted to leave the hospital grounds without the specific authorization of the director." (Cal. Code Regs., tit. 15, § 3369.1, subd. (c).)[10]

Finally, we note that our construction of section 4501.5 effectuates the public policy underlying that statute. The punishment for violating section 4501.5 is imprisonment in the state prison "for two, three, or four years, to be served consecutively." By contrast, the maximum punishment for committing a misdemeanor battery in violation of section 242 is a six-month county jail sentence and a $2,000 fine. (See § 243, subd. (a).) Like the enhanced penalty provided in section 4501 for assaults committed by prisoners against other persons, the substantially enhanced punishment provided in section 4501.5 for batteries committed by prison inmates against noninmates strongly suggests a legislative determination that further deterrence against such attacks is necessary beyond what is provided by the misdemeanor battery statute. (See *People v. Noah* (1971) 5 Cal.3d 469, 475 [96 Cal.Rptr. 441, 487 P.2d 1009] [forerunner of § 4501, prohibiting aggravated assault by one serving less than a life term, was enacted to promote prison safety]; *In re Smith* (1966) 64 Cal.2d 437, 439 [50 Cal.Rptr. 460, 412 P.2d 804] ["the purpose of section 4501 of the Penal Code is to promote prison safety by discouraging assaults by prison inmates"].) Applying section 4501.5 to state prison inmates transferred to mental health hospitals pursuant to section 2684 affords state mental health workers the same protection as state employees employed in correctional institutions who come into contact with prison inmates, and thus effectuates the intent of the statute to deter attacks by prison inmates against the nonconfined individuals with whom they come into contact. Indeed, as with the enhanced penalty provisions specified for assaults, exempting certain inmates from the operation of section 4501.5 would lessen the statute's "effectiveness and to some extent defeat its objective." (*Smith, supra,* 64 Cal.2d at pp. 439–440.)

Defendant contends, however, that the intent of section 2684 is to provide mentally ill prisoners with medical attention in order to facilitate the treatment of acute mental illness, and that the circumstance that other persons within the criminal justice system who are committed to state hospitals by court order are not subject to the provisions of section 4501.5 reflects a

---

[10] California Code of Regulations, title 15, section 3000 provides "definitions of terms as used in these regulations" and states, in relevant part, that "Department means the department of corrections" and that "Director means the director of the department of corrections."

legislative intent to exclude all mentally ill persons confined to state hospitals from the reach of that statute. We disagree. Although a number of Penal Code provisions provide for the commitment of persons to state hospitals or other medical facilities for treatment of mental illness,[11] only section 2684 specifies transfer to a state hospital of persons under commitment of a sentence to state prison. The authorization of other types of commitments involves persons who have not yet been convicted of a crime, have been found not guilty by reason of insanity, or have been civilly committed after expiration of their prison sentence, but does not provide for the treatment of persons still serving a prison sentence. As such, there exists a valid distinction between section 2684 transferees who, despite the transfer, remain prison inmates subject to punishment pursuant to their sentences and whose time in the state hospital is credited against their ongoing prison sentence, and other persons committed to state hospitals pursuant to court order who are either not yet subject to a prison sentence or have completed serving such a sentence and thus are not subject to punishment for criminal acts.[12] (*People v. Romo* (1967) 256 Cal.App.2d 589, 594 [64 Cal.Rptr. 151] [in determining "correctional facility's status as a 'state prison' for the purpose of the recidivism law," it is appropriate to consider both "the character of the institution in which the offender was confined" and "the nature of the proceedings leading to confinement"].)[13]

---

[11] See, e.g., Penal Code sections 1026 (providing for commitment to a state hospital of a defendant adjudged to be legally insane at the time the offense was committed), 1370 (providing for commitment to a state hospital or other public or private treatment facility of a defendant adjudged to be incompetent to stand trial), 2962 and 2964 (providing for inpatient treatment of prisoners found to be mentally disordered offenders after expiration of their prison term or upon a grant of parole); Welfare and Institutions Code section 6601 (providing for evaluation and possible commitment to state hospital of prisoners adjudged to be sexually violent predators six months prior to scheduled release date or upon the revocation of parole).

[12] Defendant also relies upon section 3703, which provides for a transfer to a Department of Corrections and Rehabilitation medical facility of prisoners under sentence of death who are found to be insane. Defendant, however, provides no support for his contention that prisoners transferred pursuant to this statute are not subject to the enhanced penalty provisions of section 4501.5. Accordingly, section 3703 does not facially or otherwise support defendant's interpretation of sections 2684 and 4501.5, and we need not and do not decide whether a section 3703 transferee who commits a battery may be prosecuted under section 4501.5.

[13] The same reasoning applies to defendant's contention that application of section 4501.5's increased penalties to prisoners transferred to Atascadero pursuant to section 2684 is illogical because there is no evidence section 2684 transferees, who constitute only a small percentage of Atascadero patients, present a greater danger than other Atascadero patients confined pursuant to a civil commitment or other court order. The Legislature reasonably may have determined that patients serving a sentence under a judgment committing them to state prison present more of a danger to state employees employed at Atascadero than other Atascadero patients not currently serving a prison sentence.

## IV

For the foregoing reasons, we reverse the judgment rendered by the Court of Appeal.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.