[No. C066982. Third Dist. June 6, 2012.]

SOURCECORP, INC., Plaintiff and Respondent, v.
STEVEN SHILL, Defendant and Appellant.

**COUNSEL**

JG, P.C. Business & Corporate Law and Thomas von Thury for Defendant and Appellant.

Steptoe & Johnson, Francis J. Burke, Jr., and Douglas D. Janicik for Plaintiff and Respondent.

**OPINION**

**BUTZ, Acting P. J.**—In September 2004, plaintiff Sourcecorp, Inc., registered an Arizona fraud judgment in the Sacramento County Superior Court that it had obtained against defendant Steven Shill earlier that month. The total judgment was in excess of $3 million. Pursuant to this registered judgment, Sourcecorp obtained a "turnover" order (Code Civ. Proc., § 699.040)[1] ex parte in September 2010, which directed Shill to transfer possession of $125,000 in cash to the El Dorado County Sheriff. Sourcecorp

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

had learned in the course of deposing Shill in August 2010 that the latter was keeping this sum of money in a safe in his residence. By that time, the outstanding amount on the judgment (with interest) was more than $4 million despite a garnishment order in effect since June 2005.

Shill filed a motion to vacate the turnover order wherein he contended the cash represented the balance remaining of his earnings after garnishment, and therefore under section 704.070 it was exempt from levy. The trial court denied the motion. Shill filed a timely notice of appeal from the order. (§ 703.600; *Kono v. Meeker* (2011) 196 Cal.App.4th 81, 86, fn. 2 [126 Cal.Rptr.3d 208] (*Kono*); 8 Witkin, Cal. Procedure (5th ed. 2008) Enforcement of Judgment, § 180(3), p. 217 (Witkin).)

On appeal Shill renews his argument that the cash is exempt from levy as a matter of state and federal law. He also contests the trial court's finding that he inadequately traced the source of the cash to his exempt earnings. As we find the former issue determinative, we do not need to reach the latter. We affirm the order denying Shill's motion to vacate.

## FACTUAL AND PROCEDURAL BACKGROUND

Shill sold a company to Sourcecorp, continuing as president of the company. The Arizona judgment determined that Shill thereafter caused the company's earnings to be overstated in order to trigger additional compensation to him.

After filing the garnishment order in 2005, Sourcecorp was able to collect only a little more than $216,000 from the earnings of Shill in his present employment with Document Fulfillment Services (DFS), even though tax documents showed DFS had paid him over $1.5 million from 2005 to 2009. Shill was a former part owner of DFS, in which he sold his interest in 2005 to an associate he described as a " 'pretty good friend' " for $37,500. Shill continued to serve as general manager of operations and sales. The company administering the DFS payroll took only Shill's actual total monthly salary into account for purposes of the garnishment order, and ignored any direct payments that DFS made for Shill's expenses, which included his monthly rent of $6,000 and credit card bills (one of which accrued over $180,000 in charges over a three-year period). In addition, Shill had eschewed keeping money in any type of bank account for the past five years (after Sourcecorp had executed on more than $100,000 he had in deposits), and transacted only in cash.

Sourcecorp set a judgment debtor examination for August 2010. In the course of the examination, Shill admitted that he presently had $125,000 in

the safe in his home, which he had not revealed in his other discovery responses. He had kept amounts of cash as high as $300,000 in the safe to avoid its being attached in a bank account.

After obtaining the turnover order, Sourcecorp's agent made 22 unsuccessful attempts through mid-October 2010 to effect personal service at Shill's residence and place of business. At that point, Shill retained counsel.

## DISCUSSION

■ As we recently have noted, generally all the property of a judgment debtor is subject to enforcement of the money judgment. (*Kono, supra*, 196 Cal.App.4th at p. 86.) Since the state Constitution requires the protection of a "certain portion" of a debtor's property from forced sale (Cal. Const., art. XX, § 1.5), the Legislature has enacted a comprehensive and precise statutory scheme for the enforcement of money judgments, including the specification in sections 704.010 to 704.210 of the kinds and degrees of property that are exempt from levy. (*Kono, supra*, at p. 86.) These exemptions are not subject to judicial enlargement, though we construe them in the favor of the debtor. (*Ibid.*) We review de novo the issues of the application of a statutory exemption to undisputed facts (*id.* at p. 87), and interpretation of the statutes (*People v. Meyer* (2010) 186 Cal.App.4th 1279, 1283 [112 Cal.Rptr.3d 889] (*Meyer*)).

■ In the chapter devoted to wage garnishment, section 706.050 provides, "the amount of earnings of a judgment debtor exempt from the levy of [a garnishment] shall be that amount that may not be withheld from the judgment debtor's earnings under federal law . . . ." The cross-referenced federal law limits a garnishment (as pertinent here) to 25 percent of the debtor's disposable earnings.[2] (15 U.S.C. § 1673(a).) Thus, under the terms of Code of Civil Procedure section 706.050, 75 percent of the disposable earnings are accordingly exempt from a garnishment levy.

Turning to the statutory exemptions, "paid earnings" are the subject of section 704.070. These are "earnings . . . that were paid to the employee during the 30-day period ending on the date of the levy." (*Id.*, subd. (a)(2).) Such earnings "that can be traced into deposit accounts or in the form of cash . . . are exempt in the following amounts: [¶] (1) All of the paid earnings are exempt if prior to payment to the employee they were subject to [a garnishment] . . . . [¶] (2) Seventy-five percent of the paid earnings that are levied upon . . . are exempt if prior to payment to the employee they were not subject to [a garnishment] . . . ." (*Id.*, subd. (b)(1), (2).) With respect to

---

[2] Shill concedes this is the correct percentage.

tracing, "*Subject to any limitation provided in the particular exemption*, a fund that is exempt remains exempt to the extent that it can be traced into deposit accounts or in the form of cash . . . ." (§ 703.080, subd. (a), italics added.) The debtor has the burden of tracing exempt funds. (*Id.*, subd. (b).)

Shill notes that neither the federal nor state provisions contain any express time limitation on the extent to which he can trace the exempt status of earnings received after garnishment.[3] He thus argues the cash in his safe "should remain exempt to the extent it can be traced" to paid earnings.[4]

Sourcecorp derives its time-limited interpretation of the earnings exemption from the language limiting it to earnings paid in the 30-day period before the filing of a levy in section 704.070, subdivision (a)(2). It argues that any earnings paid *before* this 30-day period and still in the debtor's possession are no longer "earnings" within the meaning of the exemption statute. As a result, it does not matter that cash on hand can be traced to what *once* were earnings, since the tracing statute expressly eschews any substantive effect on the scope of the exemption provisions.[5]

Both parties present plausible interpretations of the plain text of section 704.070. We must therefore go beyond the text. (*Meyer, supra,* 186 Cal.App.4th at p. 1283; *In re Eddie L.* (2009) 175 Cal.App.4th 809, 814 [96 Cal.Rptr.3d 437].)

In recommendations made in connection with the revision of the laws governing enforcement of judgments and attachments in 1982, the overarching purpose of the various exemptions is described as seeking to "accommodate both the interest of the judgment debtor in maintaining *a basic standard of living* and the interest of the judgment creditor in satisfying the money

---

[3] We note that a number of other exemptions have express limits on the length of time that a debtor may trace exempt funds. (See 8 Witkin, *supra*, Enforcement of Judgment, § 174(2), p. 212.)

[4] While Shill also points out that we cannot interpret our statutes in a manner that would be less favorable to a debtor than under the federal garnishment law (15 U.S.C. § 1677(1)), he admits he has not found a case from any jurisdiction establishing federal preemption on the issue of the *duration* of exemptions for paid earnings, nor does he identify any authority under federal law establishing the *permanent* nature of an earnings exemption. As he fails to recognize, this is a result of the federal law being limited in scope to *garnishment* of *earnings*; "the Act [does not have any] application to anything other than . . . earnings *before* they are paid out by [an] employer . . . ." (*Long Island Trust Co. v. United States Postal Service* (2d Cir. 1981) 647 F.2d 336, 342, italics added; accord, *Usery v. First National Bank of Arizona* (9th Cir. 1978) 586 F.2d 107, 109–111.) As a result, we do not further address federal law.

[5] Sourcecorp also relies on the express inclusion of the phrase "after payment, the [asset] is exempt" in other exemptions (citing §§ 704.160–704.190) and its absence in section 704.070. However, as the legislative history we discuss below demonstrates, this variance in language does not have the significance Sourcecorp would accord to it.

judgment. Accordingly, the general approach of the proposed law is to protect income and property needed for the *subsistence* of the judgment debtor and . . . family." (16 Cal. Law Revision Com. Rep. (1982) p. 1080, italics added.) Both the summary and the body of the report note that the exemption applies only to earnings paid within the 30 days prior to a levy or cash traceable to those earnings. (*Id.* at pp. 1015, 1081–1082.) Also included in the report were the comments of the pertinent legislative committees (here, apparently the Assem. Com. on Judiciary) (see *id.* at p. 1004). With respect to the exemption for paid earnings, these described the effect of the statute as "*continu*[*ing*] the protection of wages that have already been garnished, . . . *for 30 days after they are paid.*" (*Id.*, Legis. Com. com., p. 1403, italics added.)[6] As for the tracing statute, the Senate Committee on Judiciary's comments state, "This section applies to any fund that is exempt, *but may be limited in its application.* The introductory clause . . . recognizes that certain proceeds may be traced as exempt *only for a limited period,*" and the comment then includes the exemption for paid earnings in this category of limited-term exemptions. (16 Cal. Law Revision Com. Rep., *supra*, Legislative Com. com., at p. 1384, italics added.)

■ The gist of this legislative history is in accord with Sourcecorp's interpretation: If earnings are still on hand at the end of 30 days, the debtor's basic necessities have thus been satisfied without them. At that point, the countervailing interest in protecting a judgment creditor's ability to satisfy the judgment holds sway, and they lose their character as exempt earnings as a result.

Since the legislative comments refer to a continuation of prior law regarding earnings, we note there are decisions that construed a former related provision, which exempted earnings for *services rendered* within the 30 days before a levy. (*Le Font v. Rankin* (1959) 167 Cal.App.2d 433, 435–436 [334 P.2d 608]; *Carter v. Carter* (1942) 55 Cal.App.2d 13, 14 [130 P.2d 186]; both cited with approval in *Randone v. Appellate Department* (1971) 5 Cal.3d 536, 559, fn. 22 [96 Cal.Rptr. 709, 488 P.2d 13].) These cases made clear this exemption did not apply to earnings for services rendered *earlier* than the 30-day period. By analogy, the shade that the present exemption umbrella provides to a debtor's earnings also moves inexorably on after 30 days.

---

[6] To return to Sourcecorp's reliance on language in sections 704.160 to 704.190, the report and the legislative comments with respect to an amendment of an exemption for relocation benefits state that the phrase "After payment, these benefits are exempt" was intended to impose the burden of *tracing* on a debtor after payment in order to qualify for the exemption. (16 Cal. Law Revision Com. Rep., *supra*, pp. 1090, 1417–1418.) Section 704.070, of course, has different language expressing the same principle. The absence of the phrase from section 704.070, therefore, does not have anything to do with the issue of the duration of the exemption.

This interpretation is apparently in accord with a general rule of jurisprudence, stated as a black letter principle in a legal encyclopedia: "[A] statute exempting wages due for a time not exceeding a fixed period . . . preceding [a levy] exempts only the wages due for labor done during [that] period . . . , and wages for work performed prior to [that] fixed exemption period are not exempt." (35 C.J.S. (2009) Exemptions, § 120, p. 108, fns. omitted.) On the latter point, we note the text musters only *Johnson v. Williams* (1945) 235 Iowa 688, 692 [17 N.W.2d 405] in support (which does expressly consider that issue), but the text does not indicate that either the rule or its supporting case has been the subject of any criticism.

■ We do not let the particularly prosperous circumstances of Shill color our interpretation of section 704.070. Whether it be a fistful of dollars or $100,000 in a safe, once a debtor has had 30 days to pay for the necessities of life out of exempt earnings, the remainder becomes available to satisfy the debtor's outstanding obligation to a judgment creditor. In light of this consistent interpretation of similar statutory provisions, we cannot find Shill's interpretation equally reasonable such as to afford him the more favorable of the two. (Cf. *People v. Watson* (2007) 42 Cal.4th 822, 830, fn. 6 [68 Cal.Rptr.3d 769, 171 P.3d 1101] [rule of lenity].) As a matter of statutory interpretation, we find the trial court correctly denied the motion to vacate the turnover order on the undisputed facts of this case.

For the first time on appeal, Shill asserts that he is facing the "imposition of a life of indentured servitude or poverty" because the size of the outstanding judgment for fraud (the nature of which means he cannot discharge it in bankruptcy) subjects his assets to levy for the rest of his life. He claims this is a violation of the "excessive fines" clause in the Eighth Amendment to the United States Constitution. He cites only *United States v. Bajakajian* (1998) 524 U.S. 321 [141 L.Ed.2d 314, 118 S.Ct. 2028], which applies this provision in the context of a *criminal forfeiture*. Shill's one paragraph of argument does not provide *any* connection between a determination that a disproportionate forfeiture is unconstitutional and the context of the present case. It is unclear whether he is suggesting that as a matter of constitutional law his assets are exempt from levy, or he is making an unauthorized collateral attack on the size of a judgment now long final.

■ Not only does this manner of raising the issue forfeit our duty to consider it (*Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 591, 593, fn. 8 [59 Cal.Rptr.3d 18] (*Imagistics*)),[7] Shill's argument entirely ignores controlling law. "The purpose of the Eighth

---

[7] In his reply brief, Shill suggests for the first time that the nature of his wrongdoing does not "justif[y] a life sentence of wage deductions plus periodic confiscation of any accumulated assets," which therefore violates his right to substantive due process under the federal

Amendment . . . was to limit *the government's* power to punish. [Citation.] . . . The Excessive Fines Clause limits *the government's* power to extract payments . . . 'as *punishment* for some offense,' " in civil or criminal proceedings. (*Austin v. United States* (1993) 509 U.S. 602, 609–610 [125 L.Ed.2d 488, 497, 113 S.Ct. 2801], italics added.) We accordingly reject this argument.

## DISPOSITION

The judgment is affirmed.

Duarte, J., and Hoch, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 2012, S203994.

---

Constitution. Once again, he omits any application of this principle to the circumstances of the present case.

This cursory *and* belated invocation of a different argument forfeits our plenary consideration of it. (*Imagistics, supra,* 150 Cal.App.4th at p. 591, fn. 8; *Beane v. Paulsen* (1993) 21 Cal.App.4th 89, 93, fn. 4 [26 Cal.Rptr.2d 486].) In any event, this right of substantive due process protects only against a state remedy that imposes an excessive *penalty* such as *punitive* damages. (*BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559, 562–563 [134 L.Ed.2d 809, 818–819, 116 S.Ct. 1589]; *TXO Production Corp. v. Alliance Resources Corp.* (1993) 509 U.S. 443, 453–454 [125 L.Ed.2d 366, 376–377, 113 S.Ct. 2711].) Shill's obligations are a function of *compensatory damages* and the legal rate of interest on a judgment.