Filed 10/21/14  P. v. Swain CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C075766 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CM037796, CM039289) |
| v. | |
| ALEX MATHEW SWAIN, | |
| Defendant and Appellant. | |

Sentenced to an aggregate term of five years in state prison after pleading no contest to elder abuse and assault by means of force likely to inflict great bodily injury, defendant Alex Mathew Swain contends the trial court abused its discretion by imposing the upper term on the first offense and failing to state a reason for consecutive sentencing on the second offense.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**Case No. CM037796**

A complaint filed in December 2012 and later deemed an information charged defendant with elder abuse (count 1; Pen. Code, § 368, subd. (b)(1)—undesignated

1

statutory references are to the Penal Code), robbery (count 2; § 211), and attempted carjacking (count 3; §§ 664/215, subd. (a)).  All counts were alleged to have occurred on November 30, 2012, and named the same victim, 86-year-old Jane Doe.

Defendant pleaded not guilty and remained in custody in the county jail.

**Case No. CM039289**

A complaint filed on July 22, 2013, charged defendant with battery with serious bodily injury (count 1; § 243, subd. (d)) and assault by means of force likely to produce great bodily injury (count 2; § 245, subd. (a)(4)).  Both counts were alleged to have occurred on July 2, 2013, and named the same victim, Justin Weatherl.

**Defendant's Plea and Sentencing**

On September 5, 2013, defendant pleaded no contest to elder abuse (count 1) in case No. CM037796 and to assault by means of force likely to produce great bodily injury (count 2) in case No. CM039289.  All other charges were dismissed with *Harvey*[1] waivers.  Neither the trial court nor the People made any promises as to sentencing; the People stated that this was an "open plea."  However, the court noted:  "[B]oth counsel have articulated to the Court the facts and circumstances of each of these two cases, your lack of a prior criminal history, and your condition at the time that you were arrested in CM037796.  And I will consider all of those things as well as what's included in the probation report and a forthcoming statement in mitigation that will be presented to the Court."  (The record does not contain a statement in mitigation.)

The probation report, which the parties stipulated would provide the factual basis for defendant's plea, showed the following:

---

[1] *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

*Case No. CM037796*

On November 30, 2012, around 10:45 a.m., officers went to the parking lot of a restaurant in Chico in response to a reported battery and possible carjacking. A witness stated that defendant had assaulted an elderly female (86-year-old Jane Doe), apparently while trying to steal her car, then fled.

The victim told the officers she was getting out of her car to enter the restaurant when defendant approached, opened her door, and asked if she needed help. She said no. He asked if she had her car keys. When she said yes, defendant began looking through her purse, which she had in her left hand. She held on to the purse. Defendant said he needed her car. When she stood up, he pushed her against the car, grabbed her purse, and sat in the driver's seat. He tried to close the car door and struck Jane Doe in the head with the door. She called for help. A friend who had just arrived ran to the car, pulled defendant out, and tried to detain him but defendant slipped out of his coat and fled on foot. Jane Doe complained immediately of pain on the top of her head. When the officer interviewed her the next day, he saw bruises on her right hand, right wrist, and left upper arm.

Officers found defendant, bleeding from cuts on his hands, and ordered him at gunpoint to put his hands up and get on the ground. As they tried to handcuff him, he resisted arrest, then started screaming, "They're killing me." He refused to calm down and had to be restrained before being transported to the hospital. The officers believed defendant was under the influence of a central nervous system stimulant, possibly a methamphetamine-like substance called "bath salts." However, blood drawn at the hospital tested negative for controlled substances and alcohol. A bottle of prescription medication, later identified as Acyclovir, was found in a search of defendant's person.

Witnesses contacted by the police recounted seeing defendant walking through the parking lot of an apartment complex vandalizing cars and attempting to open car doors. One witness said defendant told her he needed her car; when she walked away, he

3

followed her, saying he needed the car "to get away from some people chasing him." He abandoned his pursuit only when he saw the witness's boyfriend coming.[2]

When the police interviewed defendant at the hospital, after waiving his rights and agreeing to answer questions, he admitted that he took "bath salts" (designed to mimic "speed") and afterward felt paranoid and heard voices. He remembered being at the restaurant but would not talk about his alleged assault and attempted carjacking. He remembered being chased, jumping fences, and striking parked cars in an attempt to get police attention because he thought people were trying to kill him; he also thought he needed a car to get away from them. When the officers came, he resisted them because he thought they might be impostors.

When defendant entered a negotiated plea in this case, he stipulated to an upper term in state prison and to waive his custody credits in return for a grant of probation.

### Case No. CM039289

On July 2, 2013, correctional deputies at the county jail, where defendant was housed, responded to a report of a physical altercation in progress. The deputies saw defendant and another inmate (codefendant) assaulting a third inmate, Justin Weatherl. The deputies broke up the fight with pepper spray and handcuffed the participants. Weatherl's face was swollen and he had a laceration above his left eye that required three stitches to close. The participants refused to talk about the incident.

Video surveillance tapes showed that while Weatherl was eating lunch at a table, defendant and codefendant, sitting one table away, ran over to him and punched him many times in the face.

As in the other case, defendant agreed to a stipulated upper term in state prison and to waive credits if granted probation.

---

[2] No charges were filed as to any of these alleged incidents.

4

*Defendant's Statements*

On October 15, 2013, defendant gave oral and written statements about the crimes.

As to case No. CM037796, defendant said that on the morning of the crime he and some strangers smoked marijuana, which he suspected afterward had been "laced with something"; he also ingested Acyclovir. He became paranoid and irrational, thinking he needed to steal someone's car to get away from people trying to kill him. That was why he accosted Jane Doe. He did not remember injuring her but felt bad that apparently he had done so. If he had been in his right mind, he would not have harmed anyone. At the hospital, a doctor told him he was suffering from kidney failure and would have died if not admitted.

As to case No. CM039289, defendant said that because his charge in the other case made him "unpopular" with his fellow inmates, he was pulled aside by an inmate two hours before lunch on the date of the crime and told: "It's either you or him." He was ordered to assault Weatherl during lunch and to keep hitting him until correctional officers intervened; he was also told he would have another inmate's assistance. He hit Weatherl "quite a few" times.

Defendant admitted a long-standing drug problem, including marijuana and methamphetamine. He stated he would like to participate in drug and alcohol services, though he had never done so before. Two treatment programs had accepted him, but he could not afford them.

Defendant did not want to give up his time credits in return for probation because he was already halfway through serving his sentence. When he signed the plea agreement, he did not realize it entailed giving up the credits.

*Factors Affecting Sentencing*

Although defendant was statutorily eligible for probation, his suitability was questionable. He was an active participant in the crimes before the court. He chose to smoke marijuana, which might have been "laced," with strangers. He now blamed his

5

violent conduct in case No. CM037796 on the drugs, but choosing to ingest illegal substances was not an unusual circumstance and was likely to lead to future crimes.

On the other hand, the victims did not suffer significant monetary loss. Defendant was not armed with a weapon in either case. His crimes did not appear sophisticated. He had never had the opportunity to participate in a grant of probation, was initially willing to do so, and appeared able to comply with reasonable terms and conditions of probation.

However, if defendant was no longer interested in a grant of probation, the five-year upper term in state prison (required for the offense of elder abuse) appeared appropriate.[3] The aggravating circumstances in California Rules of Court, rule 4.421[4] outweighed the mitigating circumstances in rule 4.423. The victim in case No. CM037796 was particularly vulnerable (rule 4.421(a)(3)) and that crime involved two attempted carjackings.[5] As stated in the probation report, "Of greater concern is the defendant has engaged in violent conduct in both cases, which indicates a serious danger to society." (Rule 4.421(b)(1).) The only evident mitigating circumstance was his lack of a criminal record. (Rule 4.423(b)(1).)

---

[3] Since the upper term on each offense to which defendant pleaded is four years, the probation report apparently meant a four-year term on the elder abuse count and a consecutive one-year term on the assault count, the sentence which the trial court imposed.

[4] Undesignated references to "rules" are to the California Rules of Court.

[5] As defense counsel pointed out at sentencing, this statement was erroneous. The crime to which defendant pleaded in that case entailed only one attempted carjacking, that of Jane Doe. The other attempted carjacking by defendant, reported by a witness, was not charged.

6

*Sentencing*

At the sentencing hearing, the trial court stated that it was originally inclined to grant probation but would not do so because defendant was not willing to waive credits; therefore it was "indicating" an upper term in state prison.

Defense counsel argued that the probation department recommended an upper term only because defendant had stipulated to it during the plea negotiations in return for a grant of probation. This was not an upper term case, but "probably a mid term case" under rule 4.423(a)(3) (crime committed because of unusual circumstance unlikely to recur).

Counsel argued, in reference to case No. CM037796, that when defendant assaulted Jane Doe he was "in a manic state" and had kidney failure. His blood screen at the hospital was negative for any controlled substance except THC. According to an expert the defense had consulted, the prescription drug defendant was taking, Acyclovir, can cause kidney failure and hallucinations. All these factors together made this an unusual case. Moreover, rule 4.423(a)(4) (participation in crime under duress, or criminal conduct partially excusable for some other reason not amounting to a defense), rule 4.423(b)(1) (lack of prior record), and rule 4.423(b)(2) (defendant suffering from mental or physical condition that significantly reduced culpability) applied as to case No. CM037796.

As to case No. CM039289, counsel asserted that rule 4.423(a)(4) (duress) and rule 4.423(a)(5) (defendant induced by others to commit crime) applied, as did rule 4.423(b)(1) (no prior record).[6]

The trial court ruled:

---

[6] Counsel also cited rule 4.423(b)(2) (mental or physical condition reducing culpability) as to this case, but this appears to have been a misstatement because counsel mentioned only the lack of a prior record in this context.

Although there was no statutory restriction on granting probation, it was denied because of (1) the nature, seriousness, and circumstances of the crimes as compared to other instances of the same crime (cf. rule 4.414(a)(1)); (2) the existence of multiple victims and other charges that were dismissed with a *Harvey* waiver (cf. rule 4.408(a), providing trial court may also consider "additional criteria reasonably related to the [discretionary sentencing] decision being made" aside from those enumerated in rule 4.401 et seq.); and (3) the likelihood that if not imprisoned defendant would be a danger to others (cf. rule 4.414(b)(8)).

Circumstances in aggravation under rule 4.421 outweighed circumstances in mitigation under rule 4.423. In aggravation, "defendant engaged in conduct that indicates a serious danger to society." (Cf. rule 4.421(b)(1), *violent* conduct that indicates a serious danger to society.)[7] In mitigation, defendant had no prior record (cf. rule 4.423(b)(1)), he had expressed remorse (cf. rule 4.414(b)(7)), and he was youthful. But "the nature, seriousness, and circumstances of this case do outweigh those mitigating factors." (Cf. rule 4.414(a)(1).)

As to the elder abuse count, the principal term, the court imposed the upper term of four years. As to the assault count, the subordinate term, the court imposed the middle term, then stayed all but one year (one-third the middle term, run consecutively to the principal term). Thus, defendant's aggregate sentence was five years in state prison.

---

[7] The court also stated: "And that there was another carjacking of a separate victim that was dismissed with a *Harvey* waiver." Defense counsel pointed out that the dismissed carjacking count pertained to Jane Doe, not to a separate victim. The court acknowledged that "[t]hose other victims that are listed in the probation report were not charged counts" and stated it would "modify [its] reasoning." The court then struck its comment.

Defense counsel stated:  "Your Honor, in case this case is appealed, I don't want to have any issues of waiver after the Court has made the findings in aggravation, I'm objecting on the record to the circumstances in aggravation being relied on by the Court."

## DISCUSSION

## I

Defendant contends:  "The trial court improperly used an aggravating factor that was either based on the wrong legal standard or relied on a fact that was an element of a crime for which [defendant] was sentenced."  We conclude the contention is forfeited. But even if it is properly before us, defendant has failed to show error.

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."  (§ 1170, subd. (b).)

" 'Sentencing courts have wide discretion in weighing aggravating and mitigating factors [citations]  . . . .  We must affirm unless there is a clear showing the sentence choice was arbitrary or irrational.'  [Citation.] . . .  The trial court need not explain its reasons for rejecting mitigating factors.  [Citation.]"  (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582-1583.)

A single aggravating factor is sufficient to justify the upper term.  (*People v. Steele* (2000) 83 Cal.App.4th 212, 226.)  The trial court is not restricted to the aggravating factors spelled out in the California Rules of Court, but "may consider aggravating circumstances not set forth in rules or statutes.  Such aggravating circumstances need only be 'reasonably related to the decision being made.' "  (*People v. Sandoval* (2007) 41 Cal.4th 825, 840, quoting rule 4.408(a).)

The Attorney General asserts that defendant's attack on the trial court's use of aggravating factors is forfeited because he did not raise it with sufficient specificity below.  We agree.

9

The forfeiture rule applies to "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices," including the claims that "the stated reasons allegedly do not apply to the particular case, and [that] the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons," if raised for the first time on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*).) This is so because "[r]outine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention." (*Ibid*.)

The *Scott* forfeiture rule applies not only where trial counsel is silent as to the trial court's discretionary sentencing choices, but also where counsel raises only general " 'boilerplate' " objections. (*People v. de Soto* (1997) 54 Cal.App.4th 1, 4 (*De Soto*).) Where the trial court at sentencing spelled out its reasons for choosing the upper term and sentencing consecutively, trial counsel's bald assertion that he "formally object[ed]" (*id*. at p. 7) to the court's choices "did nothing to give the trial court a meaningful opportunity to correct any sentencing errors" (*id*. at p. 9; see *id*. at pp. 7-9). Nor did the trial court have any "independent duty to inquire further into the specific bases for defendant's generalized objections." (*Id*. at p. 9.) Therefore, the highly specific claims of sentencing error raised first by appellate counsel were forfeited. (*Id*. at pp. 9-10.)

Here, as in *De Soto*, trial counsel objected to the trial court's choice of aggravating factors–that defendant engaged in conduct which indicated a serious danger to society and that the nature, seriousness, and circumstances of the case outweighed any mitigating factors–but failed to state reasons for his objection. Notwithstanding the well-settled forfeiture rule set out in *Scott* and *De Soto*, defendant fails to explain in his opening brief why his specific attacks on the validity of those aggravating factors, raised for the first time on appeal, are not forfeited.

In defendant's reply brief, he asserts: "In *de Soto* . . . defense counsel explicitly acknowledged that he had no substantive basis to object but was making objections as a

10

'formality,' and acknowledged that he or she could find no real basis to support the objection. [Citation.] Here, in contrast, defense counsel argued at length about how and why the rules of court did not justify imposition of the upper term. [Citation.] He also successfully corrected the court's erroneous intent to use multiple victims as a factor, which was unsupported by the evidence. [Citation.] His final objection was clearly a reference back to these arguments, and sufficiently preserved the argument that the court had improperly imposed [the] upper term by improperly relying on a factor in aggravation." This argument comes too late: since the forfeiture issue was apparent on the face of the record, defendant had an obligation to deal with it in his opening brief. (See *Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061-1062, fn. 7.) It is also unpersuasive.

First, trial counsel in *De Soto* did not "acknowledge[] that he had no substantive basis to object but was making objections as a 'formality.'" Counsel used the word "formality" only in deference to the then recent holding of *Scott* that objections are forfeited if not stated on the record. (*De Soto, supra*, 54 Cal.App.4th at p. 7.) Although counsel stated no reasons for his objections, he did not acknowledge that he had none. The holding of *De Soto* was not based on any such admission by counsel, but on the fact that he made no arguments to support his objections. Thus, defendant's attempt to distinguish *De Soto* fails.

Second, and more important, the arguments of counsel that defendant cites did not address the aggravating factors the trial court relied on, which the court had not yet mentioned. It is true that counsel successfully objected to one factor tentatively cited by the court. But when the court announced its final reasoning, which did not include that factor, counsel said only: "I'm objecting on the record to the circumstances in aggravation being relied on by the Court." (And, like trial counsel in *De Soto*, counsel here said he was raising this "objection" to avoid a waiver problem.) Since counsel's prior arguments did not address the factors in aggravation upon which the trial court

11

chose to rely, defendant's assertion that counsel's general objection was a "reference back" to those arguments is baseless.

But even assuming defendant may object to the trial court's choice of aggravating factors based on arguments he did not make below, his contentions lack merit.

Defendant asserts:  (1) If the trial court relied on rule 4.421(b)(1) (violent conduct that indicates a serious danger to society) as to the crime of elder abuse, the court "confused a factor related to the defendant with a factor related to the crime, and thereby used the wrong standard to determine that an aggravating factor existed."  (2) If the court relied on that factor as to the crime of assault, it "improperly relied on a fact that was also used to establish an element of the crime."  (3) The court's error was prejudicial because it is reasonably likely that if the court had properly construed "the statutory factors in aggravation," it would have imposed a lesser sentence.   We conclude defendant has shown no error.

Defendant's first point patently lacks merit.  Rule 4.421 begins:  "Circumstances in aggravation include factors relating to the crime and factors relating to the defendant." Defendant cites no authority for his premise, which controverts the plain language of the rule, that a trial court may not use a factor relating to the defendant as a circumstance in aggravation justifying the upper term.  Therefore, his conclusion that the court somehow confused rule 4.421(b)(1) with rule 4.421(a)(1) (crime involved great violence, great bodily harm, or other acts disclosing high degree of cruelty, viciousness, or callousness), that only the latter rule could properly have been considered, and that the facts of this case did not support the application of that rule, is unsupported.  Defendant concedes that his conduct toward Jane Doe fell within rule 4.421(b)(1).  No more is required.

Defendant's second point lacks merit because the trial court did not impose the upper term as to his crime of assault.

Although we have found that defendant fails to show error, we briefly address one point he makes as to prejudice.  Defendant notes that although the probation report cited

12

Jane Doe's particular vulnerability (rule 4.421(a)(3)) as a factor in aggravation, the trial court did not rely on that factor. Defendant then asserts the court was correct not to rely on it because there were no facts showing she was more vulnerable than any other "dependent adult" within the meaning of section 368, which was an element of the charged crime. Defendant is wrong. He surprised the victim as she sat alone in her car, trapped her inside, assaulted her, and tried to take the car by force. None of those facts is an element of elder abuse, and the trial court could properly have relied on them to find, as the probation report did, that Jane Doe was particularly vulnerable.

## II

Defendant contends the trial court erred by failing to state a reason for consecutive sentencing as to the subordinate term. However, he concedes that a valid reason existed: because the two counts arose from two separate incidents, the crimes and their objectives were predominantly independent of each other. (Rule 4.425(a)(1).) Therefore, any error in failing to state a reason for consecutive sentencing is harmless, and defendant's speculation about improper considerations the court might have entertained is irrelevant.

## DISPOSITION

The judgment is affirmed.


                                          RAYE          , P. J.



We concur:



      BLEASE        , J.



      MAURO        , J.

13