Filed 8/19/14

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073340 |
| Plaintiff and Respondent, | (Super. Ct. No. 96F00664) |
| v. | |
| SIDNEY SCOTT HUBBARD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Laurie M. Earl, Judge. Affirmed.

George Bond and Deborah Prucha, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon, Deputy Attorney General, for Plaintiff and Respondent.

This appeal involves discerning the intent of the electorate. In the November 2012 General Election, voters *prospectively* amended recidivist sentencing provisions for a defendant with two or more previous felony convictions. If a commitment conviction is

1

not for a "serious" or violent felony (subject to a number of qualifications), the prescribed sentence now is double the term otherwise provided, instead of the formerly prescribed indeterminate term of life with varying minimums (generally 25 years). (Pen. Code, § 667, subds. (e)(1), (e)(2)(A) & (C); cf. *id.*, former subd. (e)(2), as amended by Stats. 1994, ch. 12, § 1, p. 74.)[1] The voters simultaneously created a *retrospective* process for a *qualified* recidivist defendant who was "presently serving" a former indeterminate life term. (§ 1170.126, subd. (a).) A defendant can petition the original sentencing court for a recall of the sentence, and be resentenced to a determinate sentence of double the term that would otherwise apply to the commitment convictions (i.e., what a trial court would impose under the prospective amendments to the recidivist sentencing statutes) *if* this would otherwise not pose an unreasonable risk of danger to the public. (§ 1170.126, subds. (b), (f).)

Defendant Sidney Scott Hubbard filed a recall petition in December 2012.[2] He alleged that in September 1996, a jury had found him guilty of attempted robbery and reckless evasion of a police pursuit, and sustained multiple allegations of prior convictions for serious felonies. The trial court (Hull, J.) sentenced defendant to consecutive indeterminate terms of 25 years to life for the convictions, along with six years for the enhancements.[3] Defendant requested that the trial court resentence him on his conviction for reckless evasion because it was not a serious or violent felony and did

---

[1] Undesignated statutory references are to the Penal Code.

[2] Accordingly, we do not need to address whether defendants with sentences not yet final on appeal at the time of the 2012 amendments to section 667 are entitled to application of the revised sentencing provisions without filing a petition for recall pursuant to section 1170.126. (*People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*) [no retroactive effect]; *People v. Conley* (2013) 215 Cal.App.4th 1482, review granted August 14, 2013, S211275.)

[3] We affirmed the judgment, the record in which we have incorporated by reference at defendant's request. (*People v. Hubbard* (Jan. 12, 1999, C025306) [nonpub. opn.].)

not otherwise come within an exception to section 1170.126. The sentencing judge being unavailable (§ 1170.126, subd. (j)), the present trial court (Earl, J.) denied the recall petition without a hearing, finding defendant did not qualify for relief because one of his two commitment convictions was a serious and violent felony.

On appeal, defendant challenges this interpretation of section 1170.126. We agree with the trial court's interpretation of the statute. As a result, this court will affirm the order, or in the alternative treat the appeal as a petition for a writ of habeas corpus and deny it.

The facts underlying defendant's convictions are not relevant to the issues on appeal and we shall omit them as a result. We also do not need to add any additional procedural facts from the present proceeding to those described in this introduction.

## DISCUSSION

### Eligibility Under Section 1170.126 Is Determined by the Judgment as a Whole and Not Per Offense

The language in section 1170.126 is not pellucid about the statute's application to a petitioning defendant who is presently sentenced to a hybrid indeterminate life sentence composed of indeterminate life terms for *both* qualifying and disqualifying offenses. It declares its intent to apply "*exclusively* to persons presently serving *an indeterminate term of imprisonment* . . . whose *sentence* . . . would not have been *an indeterminate life sentence*" under the 2012 amendments to section 667. (§ 1170.126, subd. (a), italics added.) It then authorizes "[a]ny person serving *an indeterminate term of life imprisonment*" under former section 667 "upon conviction . . . of *a felony or felonies* that are not defined as serious and/or violent felonies" to file a recall petition for sentencing under the present provisions. (§ 1170.126, subd. (b), italics added.) The petition must include "*all of the currently* charged [*sic*] *felonies*[ ] [that] resulted in *the* sentence" presently served, along with all the findings of prior serious or violent felony convictions.

3

(*Id*., subd. (d), italics added.) The inmate is "eligible" for relief if "serving *an indeterminate term of life imprisonment . . .* for *a conviction* of *a felony or felonies* that are not defined as serious and/or violent felonies" (*id*., subd. (e)(1), italics added) and the "*current sentence* was not imposed for *any of the offenses*" specified in other exceptions to the statute (*id*., subd. (e)(2), italics added [cross-referencing § 667, subds. (e)(2)(C)(i-iii)].) Certain prior convictions also disqualify an inmate. (§ 1170.126, subd. (e)(3) [cross-referencing § 667, subd. (e)(2)(C)(iv)].)[4] Upon "receiving" the petition, the trial court determines whether the inmate is eligible for resentencing; upon a finding of eligibility, the trial court then "shall" resentence the inmate under the 2012 amendments to section 667 (i.e., a doubled prison term) *unless* it determines in its discretion that the resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f).)

Section 1170.126 does not expressly refer to a hybrid indeterminate life sentence such as defendant's. We look to the plain language of the statute to determine its proper application. We should give primacy to subdivision (a) of the statute because it is a declaration of purpose.[5] It states that the statute is intended to apply *exclusively* to persons serving a sentence of an indeterminate life term that would *not* have been an indeterminate life term under the 2012 prospective amendments. The only way the current sentence would not have been an indeterminate life term under the prospective

---

[4] The People do not assert that defendant's prior felony convictions disqualify him from relief under section 1170.126, so we do not address these other exceptions.

[5] In light of this *express* declaration of the intended scope of section 1170.126, we do not need to consider the People's argument that we should *infer* a similar purpose from the procedural directive in subdivision (d) of the statute (to include *all* commitment and prior convictions in the petition) because this indicates an intent to look at the judgment as a whole for disqualifying convictions.

4

provisions is if *no* commitment conviction was disqualifying, and thus eligibility must be assessed on the commitment judgment as a whole and not per offense.**6**

As the intrinsic language of the statute does not result in any ambiguity about the purpose of the statute in the context of hybrid sentences, we do not need to resort to any extrinsic indicia of the intent of the electorate. (*County of Sacramento v. Superior Court* (2012) 209 Cal.App.4th 776, 782; see *People v. Meyer* (2010) 186 Cal.App.4th 1279, 1283 [interpretation of statutes]; see also *People v. McRoberts* (2009) 178 Cal.App.4th 1249, 1255 [court applies same interpretive rules to initiatives].) However, as is often the practice in the Supreme Court (see, e.g., *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 279 [justifying resort to extrinsic indicia of intent to "buttress" interpretation of statute's plain language]), we note that these extrinsic interpretive aids confirm our analysis of the statute's language.

As noted in *Yearwood*, *supra*, 213 Cal.App.4th 161, the proponents of the initiative amending section 667 and enacting section 1170.126 made six arguments in its favor in the official voting materials, captioned as making punishment "fit" the crime;

---

**6** While the language of the different subdivisions of section 1170.126 can *in isolation* be read both ways, this would violate the well-established principles of statutory construction to look at the language as a whole to interpret their meaning in the context of the entire statutory or regulatory scheme of which they are a part. (*Hassan v. Mercy American River Hospital* (2013) 31 Cal.4th 709, 715; *Department of Health Services v. Civil Service Com.* (1993) 17 Cal.App.4th 487, 494-495.) In the context of section 1170.126's declaration of purpose, the language of subdivisions (b) and (e)(1) further supports the interpretation of "sentence" as an aggregate sentence and "term" as a total term of years rather than only one component of an aggregate sentence. Both subdivisions could apply to a single term imposed for multiple felonies. Also, the language in subdivisions (e)(2) and (e)(3) supports looking at the judgment as a whole instead of the offenses. Both mandate that the overall current sentence cannot include a commitment or prior conviction for any *disqualifying* offenses. Additionally, subdivision (d)'s requirement to list all of the currently charged offenses and all of the prior convictions can be read to support looking at the judgment as a whole.

5

saving over $100 million every year; making room in prison for truly dangerous felons; having law enforcement support; having taxpayer support; and being tough *and* smart on crime. Boiled down, the ballot arguments focused on saving money *while protecting public safety*, because otherwise prison overcrowding would result in the indiscriminate release of dangerous criminals. " 'People convicted of shoplifting a pair of socks, [or] stealing bread or baby formula don't deserve life sentences' "; the initiative " 'will keep dangerous criminals off the streets' " because its expert drafters " 'carefully crafted [it] so that *truly dangerous* criminals will [not] receive [any] benefits whatsoever from the reform.' " (*Yearwood*, at p. 171, italics added.)

Given these expressed concerns, it would not be in accordance with imputed voter intent to interpret section 1170.126 as allowing it to apply to the component commitment convictions of a hybrid indeterminate life sentence that are not serious or violent felonies. It is true that it would save money and *perhaps* be more fitting to the crime of reckless evasion if defendant were to serve only a consecutive determinate doubled base term. But the intent of the voters discussed above does not give *equal* weight both to the public fisc and the protection of the public, such that there is any call for giving effect to the " 'rule of lenity.' " (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1339, fn. 6.) Rather, the voters were concerned with saving money *only if* public safety were ensured at the same time. (*People v. White* (2014) 223 Cal.App.4th 512, 522 [noting electorate "approved a mandate" that amendments be "liberally construed" to *protect* safety of people of California]; *Yearwood*, *supra*, 213 Cal.App.4th at p. 175 [enhancing public safety is key purpose of amendments].) Therefore, if a "truly dangerous" felon—i.e., one who has committed a present serious or violent felony—is not to get *any* benefit under section 1170.126, then a situation in which this felon committed even *more* felonies *in addition to* a disqualifying serious or violent felony is not one entitling such felon to any amelioration of the resulting sentence. We also do not agree, as has been suggested, that

6

the "danger to public safety" determination is the vehicle through which to deny relief to defendants with hybrid sentences. The eligibility analysis is focused on screening out *offenses* that are *deemed* to be a danger to society, and the public safety analysis serves to screen out *offenders* whose characteristics *otherwise* represent a danger. In sum, we conclude that the voters did not intend to allow a defendant who has a disqualifying current conviction to benefit from section 1170.126. Even if defendant is serving "an indeterminate term of life imprisonment" under sections 667 or 1170.12, he is not someone "whose sentence under this act would not have been an indeterminate life sentence" had he been sentenced under the current law (§ 1170.126, subd. (a)).[7]

Defendant argues that the principle in *People v. Garcia* (1999) 20 Cal.4th 490 (*Garcia*) authorizing a trial court to exercise its power to strike recidivist findings in the interests of justice on an offense-specific basis (*id*. at pp. 492-493, 499-500) should apply in this context as well. This analogy is a non sequitur. *Garcia* is premised on an examination of a trial court's power to exercise its discretion *pursuant to section 1385* on the basis of a defendant's individual characteristics notwithstanding the mandates of the sentencing scheme otherwise applying to that defendant's convictions. (*Garcia*, at pp. 496-499.) This does not have *any* bearing on a trial court's exercise of its authority under section 1170.126 to determine whether the commitment convictions are eligible as a matter of law. (Even if section 1385 had any relevance whatsoever, the sentencing court in this case has already found defendant undeserving of any relief under the criteria of section 1385, an exercise of discretion we upheld on appeal (*People v. Hubbard*,

---

**7** This issue is pending in the Supreme Court. (*In re Machado* (2014) 226 Cal.App.4th 1044, review granted July 30, 2014, S219819; *Braziel v. Superior Court* (2014) 225 Cal.App.4th 933, review granted July 30, 2014, S218503; *In re Martinez* (2014) 223 Cal.App.4th 610, review granted May 14, 2014, S216922.)

*supra*, C025306, slip opn. at pp. 9-10).)  As a result, it is not a basis for applying section 1170.126 per offense.

Accordingly, defendant was not eligible for resentencing.  The trial court was therefore correct in denying the petition on receipt without a hearing.

### DISPOSITION

We assume the order is appealable, regardless of defendant's eligibility for resentencing, and affirm it.  (Alternately, we treat the appeal as a petition for a writ of habeas corpus and deny the petition.)


         BUTZ         , Acting P. J.


I concur:


       HOCH       , J.

8

DUARTE, J., Concurring.

I agree with the majority's conclusion that, after careful analysis, the language of this statute does not contain any ambiguity regarding the electorate's intended treatment of what we are referring to as "hybrid" sentences. I write separately, however, because in my view an extra step is necessary to reach this correct conclusion. I cannot join the majority in reaching it by viewing subdivision (a) of this statute (Pen. Code, § 1170.126) in isolation.

The majority relies on subdivision (a), the statute's declaration of purpose, noting that subdivision (a) "states that the statute is intended to apply *exclusively* to persons serving a sentence of an indeterminate life term that would *not* have been an indeterminate life term under the 2012 prospective amendments" and concluding therefore that "[t]he only way the current sentence would not have been an indeterminate life term under the prospective provisions is if *no* commitment conviction was disqualifying, and thus eligibility must be assessed on the commitment judgment as a whole and not per offense." (Maj. opn., *ante*, at pp. 4-5, emphases in original.)

I disagree that the first observation, although accurate, leads inexorably to the second without further analysis.

Within our court system's lexicon, the words "term" and "sentence" are at various times employed to describe different components of an aggregate sentence--that is, the "term" or "sentence" imposed on a single count of a multiple count sentence--and also to describe the *total* term of months or years of incarceration, also known as the aggregate sentence, or at times merely "sentence." This variety of use demonstrates how "persons serving a sentence of an indeterminate life term that would not have been an indeterminate life term under the 2012 prospective amendments" *might* include defendant--a person presently sentenced to a hybrid indeterminate life sentence composed of indeterminate life terms for both qualifying and disqualifying offenses. In my view, "sentence" as used in subdivision (a) could arguably apply to that component of the aggregate sentence which constitutes the indeterminate life term only for the *qualifying*

1

offense, despite the presence of a second term (or "sentence") for the disqualifying offense.

This potential ambiguity in subdivision (a), the statute's declaration of purpose, requires a continued examination of the statute for clarity. As I have explained, the critical determination for our purposes is whether "sentence" as used in the statute means the sentence per count or the sentence in the aggregate. In examining the remaining subdivisions, I find most helpful the mandate of subdivision (d) that "[t]he petition . . . shall specify *all of the currently* charged *felonies*, which resulted in *the sentence*" presently served. In my view this language is critical as it clearly employs "sentence" to mean the aggregate sentence--the sentence that resulted from the total of all felonies charged and convicted. "It is . . . 'generally presumed that when a word is used in a particular sense in one part of a statute, it is intended to have the same meaning if it appears in another part of the same statute.' " (*Delaney v. Baker* (1999) 20 Cal.4th 23, 41.)

I agree with the majority that the language of the remaining subdivisions further supports the interpretation of "sentence" as an aggregate sentence and "term" as a total term of years rather than only one component of an aggregate sentence. But I find the language of subdivision (d) the most compelling, and therefore respectfully concur to explain my reasoning.

                                                            DUARTE , J.

2

BUTZ, Acting P. J., Concurring and Dissenting.

"Naturally, I concur in the majority opinion I have prepared for the court" (*People v. Jones* (1998) 17 Cal.4th 279, 319 (conc. opn. of Mosk, J.)); "[o]bviously, I concur fully in the majority opinion I have authored" (*Cowan v. Superior Court* (1996) 14 Cal.4th 367, 378 (conc. opn. of Chin, J.)).

I write separately to explain my disagreement with the chosen disposition that my colleagues favor.  While there is a debate whether an accurate determination that a petition facially establishes a defendant's ineligibility is appealable and thus subject to summary dismissal (see *People v. Elder* (2014) 227 Cal.App.4th 1308, 1318 (conc. & dis. opn. of Butz, J.)), whereas here a trial court at the time of its order went beyond the face of the petition to determine ineligibility as a matter of statutory interpretation, a petitioner is entitled to appeal the accuracy of an issue not then confirmed in any binding authority. However, upon determining on the merits that a defendant is not eligible for relief under section 1170.126, the proper *disposition* of the appeal should be to dismiss it because denial of the petition accordingly did not affect any substantial right of the defendant. (See *Elder*, at pp. 1317-1318, 1319-1321 (conc. & dis. opn. of Butz, J.).)


                                                                  _____BUTZ_____, Acting P. J.

1